William E. Cooper, Esq.
William E. Cooper Law Offices
Nevada Bar No. 2213
601 E. Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 382-5111
Facsimile: (702) 382-2170

Attorney for *Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| MARY KAY PECK, an individual, | ) | 2:09-CV-00872-JCM(GWF) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS' MOTION** |
| -vs- | ) | **FOR JUDGMENT ON THE** |
| | ) | **PLEADINGS** |
| THE CITY OF HENDERSON, a municipality; | ) | |
| JAMES B. GIBSON, an individual; JACK | ) | |
| CLARK, an individual; ANDY HAFEN, an | ) | **(Fed.R.Civ.P. 12(c))** |
| individual; STEVE KIRK, an individual; GERRI | ) | |
| SCHRODER, an individual; and DOES 1 through | ) | |
| 25. | ) | |
| Defendants. | ) | |

COMES NOW, Defendant City of Henderson and the above-named individual Defendants James B. Gibson, Jack Clark, Andy Hafen, Steve Kirk and Gerri Schroder, by and through their attorney William E. Cooper, Esq., and move this court for judgment on the pleadings and dismissal of the complaint pursuant to Fed.R.Civ.P. 12(c).

## I.   INTRODUCTION.

For the reasons set forth in this motion, Plaintiff's First and Second Claims for Relief fail to state claims upon which relief can be granted and must be dismissed.  Defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the grounds that Plaintiff was employed with the City of Henderson as City Manager under the terms of a written employment agreement which

1

allowed the City to terminate her employment for cause, without cause or by refusing to renew the term of the employment agreement. As such, Plaintiff had no protected property interest in continued employment and was not entitled to notice, a pre-termination hearing or an opportunity to be heard prior to the termination of her employment. Therefore, Plaintiff was not deprived of a protected property interest.

Verbal statements regarding Plaintiff's work performance which were made on the record by the individual Defendants, members of the Henderson City Council, at the April 14, 2009 City Council meeting, were directed at Plaintiff's competence to perform the duties of City Manager and did not rise to the level of accusations of moral turpitude. There is no allegation in the First Amended Complaint that Plaintiff asked for but was denied a name-clearing hearing. Although there was a post-termination hearing available to Plaintiff under the mandatory arbitration provision of her employment agreement, Plaintiff waived her right to use the arbitration process to clear her name. Therefore, Plaintiff was not deprived of a protected liberty interest.

There is no allegation in the First Amended Complaint that the alleged deprivation of Plaintiff's constitutional rights was caused by the enforcement of a municipal policy or custom. Therefore, Plaintiff's First Claim for Relief against the City of Henderson must be dismissed. The individual Defendants are entitled to qualified immunity. Therefore, Plaintiff's Second Claim for Relief against the individual Defendants must be dismissed.

## II.    STATEMENT OF THE LAW.

After the pleadings are closed, a party may move for judgment on the pleadings and dismissal of the complaint pursuant to Fed.R.Civ.P. 12(c). A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. It provides a vehicle for summary adjudication on the merits after the pleadings are closed but before trial, which "may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial". *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

/ / /

/ / /

/ / /

2

Motions to dismiss under Rules 12(b) and (c) are virtually interchangeable. Both permit challenges directed at the legal sufficiency of the plaintiffs' allegations. The same standard applies to both motions. *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2nd Cir. 1998); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, fn 8 (5th Cir. 2002); *Ludahl v. Seaview Boat Yard*, 869 F.Supp. 825, 826 (W.D. Wash. 1994); *Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002); *Strigliabotti v. Franklin Resources Inc.*, 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005). Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

There are two significant distinctions between a Rule 12(b) and a Rule 12(c) motion. Unlike Rule 12(b) which allows a plaintiff in some cases to respond to a motion to dismiss by filing an amended complaint under Rule 15(a) without leave of court, Rule 15(a) does not apply to a Rule 12(c) motion because Rule 15(a) applies only when there has been no responsive pleading filed. Furthermore, although a plaintiff faced with a Rule 12(b) motion to dismiss is entitled to voluntarily dismiss his or her action without prejudice under Rule 41(a)(1), Rule 41(a)(1) only applies if no answer has been filed. Voluntary dismissal without prejudice is therefore not an option in responding to a Rule 12(c) motion.

## III. THE COURT MAY CONSIDER DOCUMENTS THAT ARE REFERRED TO IN THE COMPLAINT, ATTACHED AS EXHIBITS TO THE PLEADINGS OR UPON WHICH THE COMPLAINT NECESSARILY RELIES.

A copy of any written instrument that is attached as an exhibit to a pleading "is a part thereof for all purposes". Fed.R.Civ.P. 10(c). Furthermore, although a plaintiff is not required to attach to the complaint the documents on which it is based, when a plaintiff fails to do so, the defendant may attach to a Rule 12 motion the documents that are referred to in the complaint to show that the documents do not support plaintiff's claims. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002); *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1281, fn 16 (11th Cir. 1999). This prevents "a plaintiff

with a legally deficient claim (from surviving) a motion to dismiss simply by failing to attach a dispositive document on which it relied". *Pension Benefit Guar. Corp. v. White Consolidated Industries Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993) (parentheses added).

This "incorporation by reference" doctrine allows the court to look at documents which are attached to and/or incorporated by reference into the pleadings without converting a Rule 12 motion into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005). **The Ninth Circuit has extended the doctrine to include** any documents attached to defendant's Rule 12 motion, the authenticity of which is not contested and upon which plaintiff's complaint necessarily relies even though the documents are not mentioned in the complaint. This prevents a plaintiff from "deliberately omitting references to documents upon which their claims are based". *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superceded by statute, 443 F.3d 676 (9th Cir. 2006); See also, *Global Network Communications Inc. v. City of New York*, 458 F.3d 150, 156-157 (2nd Cir. 2006) ("prevents plaintiffs from generating complaints invulnerable to Rule 12 simply by clever drafting").

Thus, the documents attached to and incorporated into this Rule 12(c) motion, can be considered by the court without converting Defendants' Rule 12(c) motion into a motion for summary judgment.

**IV. PLAINTIFF'S FIRST CLAIM FOR RELIEF FAILS TO STATE A §1983 CLAIM AGAINST THE CITY OF HENDERSON FOR INFRINGEMENT OF A PROPERTY OR LIBERTY INTEREST.**

**A. There Is No Allegation That the Alleged Deprivation of Plaintiff's Constitutional Rights Was Caused by the Enforcement of Municipal Policy or Custom.**

Plaintiff's First Claim for Relief seeks to hold the City liable under §1983 for the acts of members of the City Council who voted unanimously to terminate Plaintiff's employment as City Manager. As such, Plaintiff's §1983 claim against the City is based solely upon *respondeat superior* liability. In *Monell, et al. v. Dept. of Social Services of the City of New York, et al.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court made clear that, "a municipality cannot be held liable under §1983 on a *respondeat superior* theory". *Id.*, 436 U.S. at 691. The court said that the touchstone of a §1983 action against a government body "is an

4

1 **allegation** that **official policy** is responsible for a deprivation of rights protected by the constitution.

2 . .". *Id.*, 436 U.S. at 690. Thus, under *Monell*, a municipality cannot be held liable under §1983

3 absent an allegation that the enforcement of a municipal policy or custom is responsible for the

4 deprivation of Plaintiff's constitutional rights. The Ninth Circuit requires at a minimum that the

5 complaint contain at least a **"bare allegation"** that the alleged misconduct of municipal officers

6 **"conformed to official policy, custom, or practice"**. See, *Galbraith v. County of Santa Clara*, 307

7 F.3d 1119, 2002 U.S.App.Lexis 21064 (9th Cir. Oct. 9, 2002). Since that allegation is missing in

8 Plaintiff's §1983 claim, the claim asserts only *respondeat superior* liability which is insufficient as

9 a matter of law to bring Plaintiff's §1983 claim against the City of Henderson.

10 Since a municipality cannot be held liable under §1983 on a *respondeat superior* theory,

11 Plaintiff's failure to allege that it was the enforcement of a City of Henderson policy or custom that

12 caused the alleged deprivation of Plaintiff's constitutional rights, is fatal to her claim for relief.

13 Simply put, Plaintiff's First Claim for Relief fails to state a viable §1983 claim against the City of

14 Henderson and must be dismissed.

15 **B.    Plaintiff Had No Property Interest in Continued Employment under the Terms of Her Employment Contract.**

16

17 In Plaintiff's First Claim for Relief, it is alleged that the termination of Plaintiff's

18 employment as City Manager somehow "violated her property interest in that she was not afforded

19 a pre-termination hearing, or any opportunity to respond to allegations made against her at the public

20 meeting on April 14, 2009". See, ¶15. This contention puts the cart before the horse.

21 To evaluate Plaintiff's constitutional claim, the court must employ a two-step analysis. First,

22 the court must determine whether the interest being asserted by Plaintiff rises to the level of a

23 "property" or "liberty" interest. If the answer is no, the second step becomes unnecessary because

24 Plaintiff has no constitutional claim entitled to recognition. If, however, a property or liberty interest

25 is at stake, then the court must weigh the competing interests of the individual and governmental

26 / / /

27 / / /

28 / / /

5

entity to determine what process is constitutionally required. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S.593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Stretten v. Wadsworth Veteran's Hosp.*, 537 F.2d 361, 1976 U.S.App.Lexis 11283 (9th Cir. May 18, 1976).

Plaintiff's First Amended Complaint is devoid of any allegation that Plaintiff had a constitutionally protected property interest in **continued employment**. To find a violation of due process, Plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. See, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (noting that a "federal constitutional claim" in the employment context depends on the existence of "a property right in continued employment"). The viability of Plaintiff's §1983 property claim necessarily depends upon her having a property interest in continued employment. *Roth*, 408 U.S. at 576-578.

To have a protected property interest, plaintiff must have more than an abstract need or desire for it. Plaintiff must have more than a unilateral expectation of it. Plaintiff must instead, have a legitimate claim of entitlement to it. *Roth*, 408 U.S. at 577. "Property interests are not created by the constitution, they are created and their dimensions are defined by existing rules or understandings that stem from a independent source, such as state law". *Loudermill*, 470 U.S. at 540, quoting *Roth, supra*, at 577. A property interest is determined with reference to state law, and stems from contractual or statutory limitations on the employer's ability to terminate an employee. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Thus, Plaintiff must have a legitimate claim of entitlement to continued employment with the City of Henderson before she can claim a deprivation of a property interest cognizable under the due process clause.

> **1)    The Terms of Plaintiff's Employment Was Governed Solely by the Terms of Plaintiff's Employment Agreement.**

Nevada law does not give Plaintiff a protected property interest in continued employment as the Henderson City Manager. See, NRS 268.405. Instead, the terms, conditions and duration of Plaintiff's employment are defined by the written employment agreement Plaintiff negotiated with the City of Henderson. This is simply an employment contract case. There are no issues of due

process. Plaintiff signed and agreed to the terms of an employment agreement which she was free to refuse. The employment agreement is attached as Exhibit A to Plaintiff's First Amended Complaint. The terms of Plaintiff's employment agreement establish the law and respective rights between the parties. The interpretation and enforceability of the employment agreement is governed by Nevada law. See, ¶16 of the Employment Agreement.

The employment agreement was for a period of three years. However, the terms of the agreement make clear that the City could terminate Plaintiff's employment **with or without cause** during that term. See, ¶s 5(c) and 6 of the Employment Agreement. Furthermore, although there was a renewal provision in the agreement, the City also had **the right not to renew** the contract. See, ¶1(b) of the Employment Agreement. The fact that the City had the absolute right to terminate the employment agreement "at any time" and "without cause", undermines Plaintiff's §1983 claim that she had a constitutionally protected property right in continued employment. See, Employment Agreement, ¶5(c).

Plaintiff's employment agreement unambiguously provided the City of Henderson with the right to not renew the agreement or to terminate Plaintiff "at any time" without cause. Under similar circumstances, courts have held that an employee does not have a property interest in continued employment. *Van Dyke v. East Shoshone Hosp. Dist.*, 1994 U.S.App.Lexis 23545 (9th Cir. Aug. 26, 1994); *Poteat v. Harrisburg Sch. Dist.*, 33 F.Supp.2d 384, 1999 U.S.Dist.Lexis 568 (M.D. Pa. Jan. 21, 1999) (despite a "for cause" termination provision in the employment contract, the board also had the right to dissolve the contract at any time without cause. Therefore, the only process that was due was the payment owed under the contract); *Downing v. City of Lowell*, 50 Mass.App.Ct. 779, 741 N.E.2d 469, 2001 Mass.App.Lexis 23 (Mass. App. Feb. 1, 2001) (employer had right to refuse to renew the employment contract); *R.M. Jackson v. Housing Authority for the Parish of St. James*, 926 So.2d 606, 2006 La.App.Lexis 531 (La. App. Mar. 14, 2006) (an employment contract establishes the law between the parties. No due process violation when employment contract contained a termination "without cause" clause).

/ / /

/ / /

7

*Loudermill* and *Roth* addressed a different type of employment relationship than that at issue here, namely, the employment of **tenured classified public employees** who could be fired **only** for cause. The fact that the employment contract at issue here could be terminated by the City by non-renewal or by termination without cause clearly distinguishes this case from *Loudermill* and *Roth*, and undermines Plaintiff's claim that she had a constitutionally protected property interest in continued employment.

The fact that the City elected to terminate Plaintiff's employment *for cause* rather than *not for cause* did not by itself create a constitutionally protected right to continued employment. This is so because the Plaintiff did not have a right to continued employment in the first place because of the *"without cause"* and non-renewal provisions in the employment agreement. The only difference between a termination *for cause* and a termination *without cause* under the terms of the employment agreement is the amount of money the City was required to pay Plaintiff as a result of the termination. Even if it is subsequently determined that the City lacked sufficient *cause* to terminate Plaintiff, then the termination would necessarily be a termination *not for cause* under ¶5(c) of the employment agreement and the Plaintiff may have a right to pursue additional contract damages under the terms of the agreement. As such, Plaintiff's damage claim would be a state law breach of contract claim and not a federal constitutional claim.

**C.    Under the Terms of the Employment Agreement, Plaintiff Waived Her Right to a Pre-termination Hearing and Opportunity to Respond.**

Although the terms of Plaintiff's employment agreement refute her claim that she has a protected property interest in continued employment, assuming for the purpose of argument that she did have a protected property interest in continued employment, Plaintiff waived her right to due process. Plaintiff's employment agreement outlines three methods whereby the City of Henderson could terminate the agreement:

1). Under ¶1(b), the City of Henderson could notify her in writing of its intent not to renew the contract and thereby terminate the contract. There is no provision in ¶1(b) which required the City to afford Plaintiff a pre-termination hearing, provide notice of the allegations against her, provide Plaintiff an opportunity to respond to those allegations or an opportunity to confront

witnesses "who allegedly provided those allegations". See, First Amended Complaint, ¶15.

2). Pursuant to ¶5(c) of the employment agreement, the City could terminate Plaintiff's employment without cause at **"any time" and for "any reason"** not prohibited by law. Again, there is no provision in ¶5(c) which required the City to provide Plaintiff a pre-termination hearing, notice of the allegations made against her, an opportunity to respond to those allegations or the right to confront witnesses.

3). Pursuant to ¶6 of the employment agreement, the City could elect to terminate Plaintiff for cause. Plaintiff agreed that the City could terminate her for cause **"at any time and without prior notice. . ."**. The only process that was due, as agreed upon by Plaintiff, was the payment to Plaintiff of "all compensation then due and owing" under the employment agreement.

Based upon the foregoing, Plaintiff expressly waived any right she may have otherwise had to notice and a pre-termination hearing. It is academic that an individual can waive the due process right to notice and hearing. *D.H. Overmyer Co. Inc. of Ohio v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). In *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), the court acknowledged that the "hearing required by due process is subject to waiver". *Id.*, 401 U.S. at 378-379. This, of course, parallels the recognition of the waiver of federal constitutional rights in the criminal context where the more important personal liberty, rather than a property right, is involved. *Illinois v. Allen*, 397 U.S. 337, 342, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970) (right to be present at trial); *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (rights to counsel and against compulsory self-incrimination); *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963) (habeas corpus); *Rogers v. United States*, 340 U.S. 367, 371, 71 S.Ct. 438, 440, 95 L.Ed. 344 (1951) (right against compulsory self-incrimination). Similarly, in the employment context, an employee can waive his contractual and constitutional right to sue for violation of his civil rights. *Zwygart v. Brd. of County Commissioners of Jefferson County, Kansas*, 483 F.3d 1086, 2007 U.S.App.Lexis 9351 (10th Cir. Apr. 24, 2007); *Forbes v. Milwaukee County*, 2007 U.S.Dist.Lexis 1282 (E.D. Wis. Jan. 4, 2007); *Velazquez v. Village of Bratenahl*, 2003 Ohio 878, 2003 Ohio.App.Lexis 807 (Ohio App. Feb. 27, 2003) (a terminated employee can waive his right to a *Loudermill* pre-termination hearing).

Thus, even assuming for purposes of argument that Plaintiff had a protected property interest in continued employment, which she did not, based upon the terms of Plaintiff's employment agreement, Plaintiff clearly waived any right she may have had to notice and a pre-termination hearing. She expressly agreed that she could be terminated for cause, "at any time, and without prior notice. . .". See, Employment Agreement, ¶6. Therefore, the City Council owed her no due process under federal constitutional law in terminating her employment pursuant to the terms of her employment agreement. See, *Loehr v. Ventura County Community College District*, 743 F.2d 1310 (9th Cir. 1984).

**D.      There Has Been No Infringement of Plaintiff's Liberty Interest.**

> **1).      The Statements Attributed to the City Council Only Addressed Plaintiff's Incompetence and Did Not Deprive Plaintiff of a Protected Liberty Interest.**

Plaintiff's First Claim for Relief alleges in conclusory terms that during her termination, Plaintiff's liberty interest was violated when "Plaintiff's integrity, character, loyalty and competence were falsely impugned". See, First Amended Complaint, ¶16. Although Plaintiff's failure to demonstrate a property interest in her continued employment will not defeat a properly asserted liberty interest claim, as *Roth* makes clear, 408 U.S. at 575, the mere fact that the City Council dismissed Plaintiff as City Manager does not by itself deprive her of a liberty interest.

Plaintiff's liberty claim is premised upon an alleged injury to her reputation. More than injury to reputation, however, must be shown to support a §1983 procedural due process claim. In its 1976 decision in *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court held that government defamation, no matter how seriously it damaged a person's reputation, does not itself work a deprivation of liberty. The court in *Paul v. Davis* held that absent a tangible loss such as termination of employment, government action that merely stigmatizes an individual does not violate due process, even if the individual is denied an opportunity to refute the charges.

The Ninth Circuit has concluded that *Roth*'s notion of liberty, while imprecise, distinguishes between a stigma of moral turpitude, which infringes the liberty interest, and a charge of incompetence or inability to get along with coworkers which does not. *Stretten v. Wadsworth Veteran's Hosp.*, 537 F.2d 361, 1976 U.S.App.Lexis 11283 (9th Cir. May 18, 1976). This distinction

is significant in this case because ¶12 of the First Amended Complaint sets out the job performance "statements" allegedly made by members of the City Council which Plaintiff alleges to have stigmatized her character and deprived her of a protected liberty interest.

In *Stretten*, the Ninth Circuit said:

> In the context of Roth-type cases, a charge which infringe's one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity **as an individual** and, as a consequence is likely to have severe repercussions **outside** of professional life. **Liberty is not infringed by a label of incompetence**, the repercussions of which primarily affect professional life, and which may well force the individual down one or more notches in the professional hierarchy. . .implicit in such distinction is the notion that **the constitutional need for procedural protection is not strong when the charge (e.g., incompetence) involves a matter which is peculiarly within the scope of employer-employee relations**. . .Employer's, including the Veteran's Administration, have a strong interest in conserving resources and dealing expeditiously with incompetent employees.

*Id.*, 537 F.2d at 366. (Emphasis added).

Thus, charges made against a terminated employee do not infringe a liberty interest unless they rise to the level of accusations of "moral turpitude", such as dishonesty or immorality. Charges that do not reach this level of severity do not infringe constitutional liberty interests. *Bollow v. Fed. Res. Bank*, 650 F.2d 1093, 1100-1101 (9th Cir. 1981). In accord, *Loehr v. Ventura County Community College District*, 743 F.2d 1310 (9th Cir. 1984) (no liberty interest violation where community college trustees fired college supervisor, publicly charged grand jury investigation, and cited as reasons for his removal "gross incompetence", faculty and management criticism of his centralized administration, budget cuts followed by quick spending of cash surplus, an athletic scandal during his tenure involving false student transcripts, and the conflict of interest of the district auditors during his administration); *Debose v. United States Dept. of Agric.*, 700 F.2d 1262, 1266 (9th Cir. 1983) (Even if there was public disclosure, charges of substandard performance do not rise to the level necessary to infringe a liberty interest); *Gray v. Union County Intermediate Edu. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) (no liberty violations where State Welfare Department publically charged special education teacher with "deliberately undermining" the united planning of the community's professional social agencies, "insubordination, incompetence, hostility   toward

authority, and aggressive behavior" for challenging the welfare department's decision not to allow student to have therapeutic abortion); *Van Dyke v. East Shoshone Hosp. Dist.*, 1994 U.S.App.Lexis 23545 (9th Cir. Aug. 26, 1994) (dismissal from government employment for reasons of incompetence or inability to get along with others does not implicate a liberty interest **even if the charges are unfair or untrue**).

Like the Ninth Circuit, other courts of appeal similarly require a **high threshold of stigmatizism** before finding a violation of a liberty interest. Labeling an employee as incompetent or otherwise unable to meet an employer's expectations does not infringe an employee's liberty interest. *Hedrich v. Brd. of Regents of the Univ. of Wis. Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001). The charge must so "sully the employee's reputation or character that the employee will essentially be blacklisted in his or her chosen profession. . .". *Head v. Chicago Sch. Reform Brd.*, 225 F.3d 794, 802 (7th Cir. 2000). A liberty stigma claim requires false assertions of fact; mere opinions do not give rise to a liberty stigma claim. *Strasburger v. Brd. of Edu.*, 143 F.3d 351 (7th Cir. 1998). The stigma must be significant and usually involves allegations of dishonesty, immorality, racism, or a similar character demeaning charge; a well-rounded expression of concern about a public officer's leadership cannot be held to be stigmatizing. *Howard v. Columbia Public Sch. Dist.*, 363 F.3d 797, 802 (8th Cir. 2004).

The "statements" cited in ¶12 of Plaintiff's First Amended Complaint do not support the claim that Plaintiff's liberty interest has been infringed. The "statements" relate solely to Plaintiff's inability to perform satisfactorily in the position of City Manager, including her unwillingness or inability to deal with coworkers in a professional manner. These are not the kind of charges likely to preclude Plaintiff from continuing to work in governmental service. The statements clearly are directed at Plaintiff's incompetence in the performance of her duties as City Manager. Her incompetence in the performance of her job is a matter which falls particularly within the scope of the employer-employee relationship and is a matter which the City Council has a duty and obligation to deal with in an expeditious manner. The sole reason for Plaintiff's termination was incompetence

/ / /

/ / /

and the only stigma of which Plaintiff complains is incompetence. These are not the type of statements which would infringe Plaintiff's liberty interest under the holding in *Stretten* and therefore there has been no deprivation of due process on that account.

### 2) Plaintiff Has Not Alleged That the Statements by the City Council Were False.

Although ¶16 of the First Amended Complaint alleges in a vague and conclusory manner that, "Plaintiff's integrity, character, loyalty and competence were 'falsely impugned'" at the April 14, 2009 Council meeting, it is not specifically alleged that the specific statements set out in ¶12 of the First Amended Complaint were in fact false.

For government action to infringe the "reputation, honor, or integrity" of an individual, that government action must first involve a publication that is **affirmatively alleged to be false**. *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (the hearing required when a non-tenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name. However, if he does not challenge the substantial truth of the material accusation, no hearing would afford a promise of achieving that result for him. The absence of any such allegation or finding is fatal to respondent's claim under the Due Process Clause that he should have been given a hearing). See also, *Campanelli v. Bockrath*, 100 F.3d 1476, 1996 U.S.App.Lexis 30237 (9th Cir. Nov. 22, 1996) (to state a due process claim, plaintiff must allege that the defendant's statements were substantially false); *Ersek v. Township of Springfield, Delaware County*, 102 F.3d 79, 1996 U.S.App.Lexis 33381 (3rd Cir. Dec. 9, 1996) (the publication must be substantially and materially false. The disputed false statements must cause the harm. Otherwise, a hearing would be unable to clear the plaintiff's name).

Here, there is no specific allegation in the First Amended Complaint that each of the "statements" in ¶12 of the First Amended Complaint are materially and substantially false. Accordingly, Plaintiff has failed to state a claim for a deprivation of liberty sufficient to entitle her to a name-clearing hearing.

/ / /

/ / /

3) **Plaintiff Did Not Request a Name-Clearing Hearing and Waived the Post-Termination Hearing She Was Entitled to Receive under the Employment Agreement.**

Assuming for purposes of argument that Plaintiff's liberty interest was infringed by the charges made against her at the April 14, 2009 City Council meeting, the United States Supreme Court has established that a terminated employee has a constitutionally based liberty interest in clearing her name when stigmatizing information regarding the reasons for the termination is publicly disclosed. *Roth*, 408 U.S. at 573. See also, *Cox v. Roskelley*, 359 F.3d 1105, 2004 U.S.App.Lexis 3015 (9th Cir. Feb. 20, 2004). The process that is due to an employee that has been stigmatized in the course of a decision to terminate his employment, is the opportunity to clear his name at a name-clearing hearing. *Codd*, 429 U.S. at 627-628.

If a person is "afforded. . .notice and the **opportunity** to respond to the allegations against [her]", **her liberty rights are not violated**. *Robinson v. County of Lancaster, Conestoga View Nursing Home*, 2005 U.S.Dist.Lexis 36375 (E.D. Pa. Dec. 28, 2005) (quoting *Graham v. City of Philadelphia*, 402 F.3d 139, 144 (3rd Cir. 2005) (Plaintiff's appeal of her termination and subsequent hearing on appeal overcame any liberty interest claim). **It is the denial of a name-clearing hearing that causes the deprivation of a liberty interest** without due process. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002).

As to the nature of the name-clearing hearing, there is authority that the hearing need not always be a formal hearing. *Baden v. Koch*, 799 F.2d 825 (2nd Cir. 1986). The hearing can be adequate even if it occurs after publication. *Rankin v. Indep. Sch. Dist.*, 876 F.2d 838 (10th Cir. 1989); *Patterson v. City of Utica*, 370 F.3d 322 (2nd Cir. 2004). In *Graham v. City of Philadelphia*, 402 F.3d 139 (3rd Cir. 2005) a police officer was suspended without pay following his arrest for various crimes. He was subsequently tried for these charges and acquitted. In his §1983 complaint, he alleged that he was denied his procedural due process right to a name-clearing hearing. The Third Circuit rejected plaintiff's claim because the criminal trial itself afforded him an opportunity to clear his name. In *Rankin v. Indep. Sch. Dist.*, 876 F.2d 838 (10th Cir. 1989), the Tenth Circuit held that

/ / /

/ / /

14

a name-clearing hearing need not occur prior to the publication of the stigmatizing information, "a name-clearing hearing may be constitutionally adequate even if it occurs after publication". *Id.*, at 842.

### a) Plaintiff Did Not Request a Name-Clearing Hearing.

There is no allegation in the First Amended Complaint that Plaintiff requested but was denied a name-clearing hearing. Thus, Plaintiff's liberty claim is properly dismissed because she failed to request a name-clearing hearing. While the Ninth Circuit lacks a published decision on point, other circuit authority is instructive.

In *Quinn v. Shirey*, 293 F.3d 315, 320-321 (6th Cir. 2002), the Sixth Circuit held that a stigmatized terminated employee fails to state a claim for deprivation of liberty interest if the plaintiff fails to **allege** that she requested but was denied a name-clearing hearing. A plaintiff's failure to request a name-clearing hearing is fatal to her liberty interest claim. Other circuits agree. See, *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993) (plaintiff must request a hearing in which to clear his name and the request must be denied); *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006) (an employee who fails to request post-termination process cannot later sue for having been deprived of it); *Wojcik v. Mass. State Lottery Comm'n.*, 300 F.3d 92, 103 (1st Cir. 2002) (to establish claim for liberty deprivation the government must have failed to comply with employee's request for name-clearing hearing). In accord, *Holscher v. Olson*, 2008 U.S. Dist.Lexis 50057 (E.D. Wash. Jun. 30, 2008).

### b) Plaintiff Waived the Post-termination Hearing She Was Entitled to Receive under the Employment Agreement.

Pursuant to the terms of her employment agreement, Plaintiff did receive notice and an opportunity to clear her name. There is a mandatory arbitration provision in Plaintiff's employment agreement which encompassed "Any claim or controversy between Peck and COH arising under or in connection with this agreement. . .and shall be the exclusive remedy for all disputes. . .". See, ¶17 of the Employment Agreement. Rather than exercise her right to clear her name through the which was available arbitration process, Plaintiff elected to waive that opportunity and elected instead to proceed directly to federal court with her §1983 action. She did this by way of a stipulation with the

City of Henderson. A copy of the Stipulation is attached hereto as Exhibit 1. Thus, although Plaintiff had an opportunity to clear her name through the arbitration process available to her under the employment agreement, she waived her right to do so.

**4) Under Nevada Law, the Statements Made by the City Council During a Public Meeting Are Absolutely Privileged and Cannot Be Used in a Civil Action.**

The Henderson City Council is subject to very stringent open meeting rules and regulations under Nevada law which required the City Council members to express their concerns about Plaintiff's incompetent work performance on the record at the April 14, 2009 Council meeting.

As a public body, the Henderson City Council is required to deliberate and take action at an open and noticed public meeting. NRS 241.010. Public bodies are prohibited from holding a closed meeting to consider "the character, alleged misconduct or professional competence of. . .a city manager". NRS 241.031. See also, *McKay v. Board of Supervisors of Carson City, Nevada*, 102 Nev. 644, 730 P.2d 438 (1986). Because of these restrictions, under Nevada law any statement made by a member of a public body during the course of a public meeting is **absolutely privileged** and cannot be used to impose liability for defamation, nor can it be used to constitute a ground for recovery in any civil action. NRS 241.0353. Moreover, there is no private cause of action under the Nevada's Open Meeting Law - a violation can only be remedied through declaratory or injunctive relief, not damages. *Stockmeier v. Nev. Dept. of Corr. Psych. Review Panel*, 183 P.3d 133 (Nev. 2008). Accordingly, the City Council members were required by Nevada law to put their concerns about Plaintiff's work performance on the record at a April 14, 2009 public Council meeting before voting on whether to terminate Plaintiff's employment contract.

## V. PLAINTIFF'S SECOND CLAIM FOR RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. The Second Claim Fails to State a Claim for Civil Conspiracy.

Plaintiff's civil conspiracy claim is perplexing. Unlike Plaintiff's First Claim for Relief, it is not alleged in the caption of the Second Claim for Relief that the conspiracy claim is being brought under §1983. Indeed, there is no allegation that the purpose of the conspiracy was to violate or otherwise deprive Plaintiff of her constitutional rights protected by §1983. Instead, Plaintiff alleges

the purpose of the conspiracy was "to remove Plaintiff from her position as COH City Manager". See, ¶18 of the First Amended Complaint. As such, Plaintiff pleads a state law civil conspiracy tort claim. Under Nevada law, an actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an **unlawful objective** for the purpose of harming another, and damage results from the act or acts". *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989). Under Nevada law, the purpose of a civil conspiracy must be unlawful.

It is not unlawful for the City Council to terminate Plaintiff's employment as City Manager. Plaintiff's employment agreement expressly allows the City Council to do just that. The City Council has the contractual right to not renew the employment contract under ¶1(b) of the employment agreement, to terminate Plaintiff's employment without cause under ¶5(c) of the employment agreement, or to terminate Plaintiff's employment with cause under ¶6 of the employment agreement. Therefore, since the object of the alleged conspiracy is not unlawful, Plaintiff has failed to state a civil conspiracy tort claim upon which relief can be granted under Nevada law. Furthermore, the Defendants are absolutely immune from liability for exercising their discretion to terminate Plaintiff's employment contract. NRS 41.032. And, with regard to the alleged "statements" made by the Defendant City Council members at the April 14, 2009 public hearing, those statements are **absolutely privileged** and cannot be used to impose liability for defamation, nor can they be used to constitute a ground for recovery in any civil action. NRS 241.0353. For these reasons, Plaintiff has failed to allege a civil conspiracy tort claim which is cognizable under Nevada law.

Even assuming for the purpose of argument that Plaintiff is attempting to plead a conspiracy to violate §1983, she has failed to do so. First, the object of the conspiracy as alleged is not to violate or deprive Plaintiff of rights protected by §1983. Secondly, Plaintiff's conspiracy claim is necessarily premised on the allegations in Plaintiff's First Amended Complaint that she was denied property and liberty without due process. As discussed above, Plaintiff has failed to state a claim for deprivation of her property or liberty interests under §1983. Therefore, the dismissal of Plaintiff's property and liberty claims would necessarily nullify Plaintiff's conspiracy claim. This

17

is so, because the conspiracy claim is based solely on allegations that are insufficient as a matter of law to state a claim for deprivation of a federal constitutional right under §1983. The insufficiency of Plaintiff's allegations to support a §1983 violation preclude a federal conspiracy claim predicated on the same allegations. *Cassettari v. County of Nevada*, 824 F.2d 735, 739, 1987 U.S.App.Lexis 10551 (9th Cir. Aug. 10, 1987); *Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th Cir. 1984).

**B.    The Conspiracy Claim Brought Against the Individual Defendants in Their Individual Capacities Is Barred by the Doctrine of Qualified Immunity.**

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 2009 U.S.Lexis 591 (Jan. 21, 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact". *Id.*, (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)). Because qualified immunity is an **immunity from suit** rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial. *Id.*; *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved **prior to discovery**. *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Id.*; *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. *Id.*, 533 U.S. at 201. Second, only if a plaintiff has satisfied the first step, the court must then decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Qualified immunity is applicable unless the official's conduct violated a

clearly established constitutional right. *Anderson*, 483 U.S. at 640. *Saucier's* mandatory two-step sequence was modified by the Supreme Court in *Pearson*. The court said:

> On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, 129 S.Ct. at 818; In accord, *Barnard v. Las Vegas Metro Police Dept.*, 310 Fed.Appx. 990, 2009 U.S.App.Lexis 2168 (9th Cir. Feb. 4, 2009); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 2009 U.S.App.Lexis 6394 (9th Cir. Mar. 25, 2009); *Millender v. County of Los Angeles*, 564 F.3d 1143, 2009 U.S.App.Lexis 9735 (9th Cir. May 6, 2009); *Springer v. Placer County*, 2009 U.S.App.Lexis 13112 (9th Cir. June 18, 2009).

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established an objective reasonableness test for qualified immunity based on whether the official violated clearly established federal law. Under this test an official who acted unconstitutionally, but did not violate clearly established federal law, will be found to have acted in an objectively reasonable manner and will be protected from personal liability by qualified immunity. See also, *Brewster v. The Board of Education of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 1998 U.S.App.Lexis 15768 (9th Cir. July 13, 1998). **The Plaintiff shoulders the burden of proving that the rights he claims are "clearly established"**. See, *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The Supreme Court has made clear that qualified immunity provides a protection to government officers that is quite **far-reaching**. Indeed, it safeguards "all but the plainly incompetent or those who knowingly violate the law. . .If officers of reasonable competence could disagree on the issue [whether a chosen course of action is constitutional], immunity should be recognized". *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (the test allows ample reason for reasonable error on the part of the government official).

/ / /

/ / /

/ / /

The Supreme Court has also amplified what it means for a right to be "fairly established" within the meaning of *Harlow*. Specifically, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In other words, before being charged with monetary liability, public officials must be given clear notice that their conduct is unlawful. Although cases need not be "fundamentally similar" in order to put an officer on notice that his conduct violates established law, *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), if the parameters of the right are not clearly established by case law, the official is entitled to qualified immunity. See, *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (qualified immunity affords government officials the benefit of the doubt in close calls, since "officials should not err always on the side of caution" because they fear being sued).

Based on the argument and law set out herein and the facts set out in the exhibits attached to Plaintiff's First Amended Complaint, including Plaintiff's employment agreement, it is clear that Plaintiff has suffered no deprivation of a protected property or liberty interest as a result of the termination of her employment. However, even assuming for purposes of argument that she was deprived of a property or liberty interest and the first *Saucier* prong is satisfied, Defendants nevertheless are still entitled to qualified immunity under the second *Saucier* prong because it would not have been clear to reasonable City Council members in the situation confronted by the Defendants, that their conduct was unlawful under clearly established law.

The individual Defendants named in this action were presented with a unique set of facts. Plaintiff's employment as City Manager was governed by an employment agreement which specifically identified the terms and conditions of her employment, including the rights of the respective parties with respect to the termination of the contract. In addition, the City Council was confronted with a Nevada law which precluded the Council from going into a closed personnel session to discuss Plaintiff's work performance and whether or not to terminate her employment. NRS 241.031. Nevada law required the City Council members to address their concerns about Plaintiff's incompetence on the record at a public hearing. NRS 241.010. In doing so, the

statements made by the City Council were absolutely privileged under Nevada law and could not be used to impose liability for defamation, nor could the statements be used to constitute a ground for recovery in any civil action. NRS 241.0353.

**1)** **The Individual Defendants Are Entitled to Qualified Immunity on Plaintiff's Property Interest Claim.**

The vast body of case law regarding stigma-plus employment termination cases involve *Loudermill* and *Roth*-type employment relationships, namely, tenured classified public employees who by regulation or statute can be fired **only** for cause. Since the employees can be terminated **only** for cause, *Laudermill* and *Roth* recognize that they have a constitutionally protected property interest in continued employment, and therefore have a property interest protected by due process.

Here, the terms of Plaintiff's employment is clearly distinguishable from the *Loudermill* and *Roth*-type cases. The terms of Plaintiff's employment are defined by the terms of the written employment agreement Plaintiff negotiated with the City. When the individual Defendants discussed Plaintiff's work performance at the April 14, 2009 City Council meeting, and discussed the options available to terminate Plaintiff's employment, they did so by focusing their attention on the terms of Plaintiff's employment agreement. This was objectively reasonable under the circumstances because the *Loudermill* and *Roth*-type case law did not establish clear federal law in regards to the termination of employees like Plaintiff, who had an employment contract that could be terminated "at any time", "for any reason", "without notice", "with or without cause", or which contained a provision wherein the employer had the option of not renewing the employment contract.

Both the City Council and the Assistant City Attorney who was present at the Council meeting to advise the City Council on the various termination options available under the employment agreement, were objectively reasonable in looking at the terms of the contract to determine the rights of the respective parties. In regards to the advise and guidance the Assistant City Attorney provided to the City Council at the April 14, 2009 meeting, see the transcript of the meeting which is attached as Exhibit B to Plaintiff's First Amended Complaint, at pgs., 2, 3-6 and 35. The *Loudermill* and *Roth*-type cases which found due process violations in the context of termination of employment, generally did not have as part of their fact patterns, written employment

contracts that allowed the employer to terminate an employee "at any time", "for any reason", "without notice", "with or without cause", or which contained a provision wherein the employer had the option of not renewing the contract.

In contrast to the *Loudermill* and *Roth*-type cases, courts that have construed written employment contracts with termination provisions like those contained in Plaintiff's employment agreement, have generally found no deprivation of a constitutionally protected property interest. See, cases cited in Section IV(B) above. Thus, assuming for purposes of argument that Plaintiff was deprived of a protected property interest by the manner in which her employment was terminated, the law was not clearly established at the time of the implementation of Plaintiff's termination that Defendants would violate due process if they followed the termination provisions in Plaintiff's employment agreement, which allowed termination with or without cause, gave the employer the right to not renew the contract and where, under the terms of the contract, Plaintiff had waived pre-termination notice, hearing, and the right to be heard.

### 2) The Individual Defendants are Entitled to Qualified Immunity on Plaintiff's Liberty Interest Claim.

The individual Defendants are also entitled to qualified immunity on Plaintiff's liberty interest claim. The Defendants were objectively reasonable in not providing Plaintiff with a separate name-clearing hearing in addition to the mandatory arbitration hearing which was available to Plaintiff under the terms of her employment agreement. Although it is not alleged in the First Amended Complaint that Plaintiff asked for but was denied a name-clearing hearing, it is clear that it was Plaintiff's decision to waive her right to clear her name in the post-termination arbitration proceeding provided for in the employment agreement, and to go directly to Federal Court with her §1983 claims.

As for the statements set out in ¶12 of the First Amended Complaint which were allegedly made by the individual Defendants during the April 14, 2009 Council meeting, the Defendants' decision to make those statements was objectively reasonable in that the statements related exclusively to Plaintiff's work performance and competence to perform the duties of the position of City Manager. The statements did not rise to the level of accusations of moral turpitude. The

statements were also objectively reasonable in light of Nevada law which required the City Council to discuss the professional competence of the City Manager on the record in an open public meeting. NRS 241.031; *McKay v. Board of Supervisors of Carson City, Nevada*, 102 Nev. 644, 730 P.2d 438 (1986). Further, under Nevada law any statement which is made by a member of a public body during the course of a public meeting is absolutely privileged and cannot be used to impose liability for defamation, nor can it be used to constitute a ground for recovery in any civil action. NRS 241.0353.

The facts of this case are genuinely unique from the facts of the *Loudermill* and *Roth*-type cases. It would not have been clear to reasonable City Council members that their conduct in terminating Plaintiff's employment consistent with the terms of Plaintiff's employment agreement and in compliance with the dictates of Nevada law, would cause a deprivation of Plaintiff's protected liberty interest. There was no clearly established law in effect at the time of Plaintiff's termination that the Council members' reliance on the contract terms and Nevada law would violate Plaintiff's constitutional due process rights.

## VI. PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIMS SHOULD ALSO BE DISMISSED.

Pursuant to 28 U.S.C. §1367(c) the federal district courts have discretion to decline to exercise supplemental jurisdiction over supplemental state law claims if the district court has dismissed all claims over which it had original jurisdiction.

Accordingly, since the district court must dismiss the federal §1983 claims set forth in Plaintiff's First Amended Complaint alleging interference with Plaintiff's property and liberty interests, the court should also dismiss Plaintiff's supplemental state law claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**VII.  CONCLUSION.**

2       Based on the foregoing, Defendants' Fed.R.Civ.P. 12(c) Motion for Judgment on the

3  Pleadings should be granted and the First Amended Complaint dismissed.

4       Dated this 25th day of June, 2009.

5                                        WILLIAM E. COOPER LAW OFFICES

6

7                                        By _____/s/_____
                                             William E. Cooper, Esq.
8                                            601 E. Bridger Avenue
                                             Las Vegas, Nevada 89101
9                                            Attorney for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that a true and correct copy of the **DEFENDANTS' MOTION FOR**

3 **JUDGMENT ON THE PLEADINGS**, has been forwarded to the following parties on this 25th day

4 of June, 2009.

5                              ***Via Electronic Court Mail Delivery System***
                              Norman H. Kirshman
6                              Law Offices of Norman Kirshman
                              3800 Howard Hughes Parkway, Suite 500
7                              Las Vegas, Nevada 89169

8

9                      By:_____/s/_____
                              Diedre N. Hoffman, an employee
10                             of William E. Cooper Law Offices

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

# STIPULATION AND AGREEMENT

This Stipulation and Agreement is entered into between the City of Henderson (hereinafter "City"), by and through its legal counsel, William E. Cooper, Esq., and Mary Kay Peck (hereinafter "Peck"), by and through her legal counsel, Norman H. Kirshman, Esq.

WHEREAS on or about April 14, 2009, the City Council for the City of Henderson voted to terminate Peck's Employment Contract with the City. A copy of Peck's Employment Contract is attached hereto as Exhibit A.

WHEREAS paragraph 17 of Peck's Employment Contract requires that any claim or controversy between Peck and the City arising under or in connection with the Employment Contract shall be settled by arbitration and shall be the exclusive remedy for all disputes.

WHEREAS on or about April 15, 2009, pursuant to paragraph 17 of her Employment Contract, Peck made an arbitration demand upon the City in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. In response to Peck's demand, the American Arbitration Association commenced an arbitration in case number 79 166 00064 09, Mary Kay Peck and City of Henderson.

WHEREAS counsel for Peck has advised the City of Peck's intention to amend her arbitration claim to assert claims against the City pursuant to 42 U.S.C. §1983. The parties agree that the most appropriate forum for the litigation of Peck's §1983 claims is in the Federal District Court for the District of Nevada.

/ / /

/ / /

NOW THEREFORE, the parties agree as follows:

1.     The parties agree to mutually request that the arbitration proceeding in the American Arbitration Association case number 79 166 00064 09 be vacated so that Peck can file her §1983 action in the Federal District Court for the District of Nevada; and

2.     The parties further agree that if Peck files any supplemental state law claims in conjunction with her §1983 action, in the event the §1983 claims are dismissed by the Federal District Court, the parties agree that any remaining supplemental state law claims in the federal action shall be settled by arbitration, pursuant to the terms of paragraph 17 of Peck's Employment Contract, which is incorporated herein by reference in its entirety.

Date: 5/11/2009

WILLIAM E. COOPER LAW OFFICES

By William E. Cooper
    William E. Cooper, Esq.
    Nevada Bar No. 2213
    601 E. Bridger Avenue
    Las Vegas, Nevada 89101
    Attorney for City of Henderson

Date: 5/11/09

NORMAN KIRSHMAN LAW OFFICES

By Norman H. Kirshman
    Norman H. Kirshman, Esq.
    Nevada Bar No. 2733
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
    Attorney for Mary Kay Peck

**EXHIBIT A**

## EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), entered into effective

_October 16_, 2007, is between the City of Henderson, having its principal place of

business at 240 Water Street, Henderson, Nevada ("COH"), and Mary Kay Peck, ("Peck") an

individual residing at the address set forth below her signature at the end of this Agreement.

### RECITALS

1.      Peck  has been employed by the COH since February 1995, and is currently

serving as the  Assistant City Manager.

2.      COH desires to continue to employ Peck, recognize her prior contributions to the

COH, motivate Peck  to continue her employment with COH and increase her knowledge and

experience in order to assume even greater responsibilities.

### AGREEMENT

ACCORDINGLY, the parties agree as follows:

1.      **Period of Employment**

a.      **Basic Term.**  COH shall employ Peck as City Manager with duties and

responsibilities as described in Article III, Sections 3.020, 3.140 of the City Charter, for a period

of three years  from the effective date of this Agreement , consistent with Article I, Section 1.010

of the City Charter (Legislative intent)  unless Peck's employment is terminated sooner in

accordance with Article III, Section 3.030 of the City Charter.

b.      **Annual Renewal.**  At the expiration of each anniversary year of the three

(3)  year  term, this Agreement shall automatically extend for an additional  three-year period

unless the Council duly convened following required Notice in writing to the contrary at least 90

days prior to the anniversary expiration date, of the intention by the Council to terminate the employment relationship.

2. **Position, Duties, Responsibilities**

   a. **Position.** Peck is hereby employed by COH as City Manager and shall discharge appropriate responsibilities as generally set forth in Article III, Sections 3.020 and 3.140 of the City Charter, as well as such other duties as may reasonably be assigned by the COH Council. Peck shall at all times perform her duties and discharge her responsibilities under this Agreement diligently and conscientiously to the best of her ability, consistent with applicable law,. Peck shall report directly to the Mayor and City Council.

   b. **Other Activities.** Except with the prior written consent of the COH, Peck will not (i) accept any other employment, or (ii) engage, directly or indirectly, in any other business activity (whether or not pursued for pecuniary advantage) that is or may be in conflict with, or that might place Peck in a position in conflict with COH. However, absent a conflict of interests, and upon reasonable written notice to the Mayor, Peck may teach, consult and accept speaking engagements on a fee basis for her own account.

   c. **General Restrictions on Use.** During he Period of Employment, Peck shall use Proprietary Information, and shall disclose Confidential Information, only for the benefit of COH and as is necessary to carry out her responsibilities under this Agreement. Following termination, Peck shall neither, directly or indirectly, use any Proprietary Information nor disclose any Confidential Information, except as expressly and specifically authorized in writing by COH. The publication of any Proprietary Information through literature or speeches must be approved in advance in writing by COH.

3.    **Compensation.**

In consideration of the services to be rendered under this Agreement, Executive shall be entitled to the following:

a.    **Salary.** COH shall pay Peck as compensation for services as City Manager, during her first six months of employment, a base salary at the annual rate of $225,000.000. At the end of the first six month period of employment, the Council shall conduct a performance evaluation. Peck shall be eligible for a salary increase at that time if approved by the Council. Thereafter, Peck shall be given annual performance evaluations beginning on the first anniversary of this Agreement. Peck's salary shall be adjusted from time to time by the Council upon such annual performance evaluation. Salary shall be payable in accordance with the standard payroll procedures of COH.

b.    **Benefits.** Peck shall be eligible to participate in all COH benefit plans, and receive perquisites of employment at least equal to those provided to other similarly situated administrative or executive employees, except it is expressly agreed by the parties that there shall be no maximum to the amount of sick leave or annual leave accrued by Peck.

4.    **Administrative Leave**

Peck shall be allowed eight (8) days of paid administrative leave to be utilized in accordance with City of Henderson Administrative Policy 001.

5.    **Termination of Employment**

a.    **Termination by Death.** Peck's employment shall terminate automatically upon her death. COH shall pay to Peck's beneficiaries or estate, as appropriate, any compensation then due and owing, and shall continue to pay Peck's salary and benefits, through

the second full month after her death.  Thereafter, all obligations of COH under this Agreement shall cease. Nothing in this section shall affect any entitlement of Peck's heirs to the benefits of any life insurance plan or other applicable benefits.

        b.     **Termination by Disability.** If Peck is prevented from performing the essential functions of the position, or without accommodation, by reason of physical or mental incapacity for a period of more than ninety (90) work days in the aggregate during any twelve-month period, then, to the extent permitted by law, COH may terminate Peck's employment.  In that event COH shall pay to Peck all compensation to which she is entitled through the last day of the month in which the 90th day of incapacity occurs.  Thereafter, all of the obligations of COH under this Agreement shall cease. Nothing in this Section shall affect Peck's rights under any disability plan in which she is a participant.

        c.     **Termination By COH Not For Cause.**  At any time, COH, by appropriate Council action, may terminate Peck's employment without cause for any reason not prohibited by law, by providing Peck thirty (30) days' advance written notice, and further provided that Peck shall, in addition to all compensation due and owing through the last day actually worked, receive the following:

        (i)     COH shall pay Peck a severance payment equal to the balance of three (3) year term of this Agreement at her then current Base Compensation rate; in addition to all sick leave and annual leave accrued.. The severance payment will be made in the form of salary continuation for that period (the "Severance Period"), payable on the normal payroll schedule followed by COH.

(ii) The amount of any payment provided for in this Section 5.c. shall not be reduced, offset or subject to recovery by COH by reason of any compensation earned by Peck as the result of employment by another employer during the Severance Period so long as Peck is not in violation of material provisions of this Agreement.

6 **Termination By COH For Cause.** At any time, and without prior notice, COH, acting through the Council, may terminate Peck's employment For Cause (as defined below). COH shall pay Peck all compensation then due and owing; thereafter, except for Peck's right to mediation and/or binding arbitration, COH's obligations under this Agreement shall cease. Termination for "Cause" shall mean termination of Peck's employment because of (i) conviction by a court of competent jurisdiction of misappropriation or embezzlement of COH property or funds; (ii) conviction of any felony involving moral turpitude; (iii) intentional material breach of this Agreement; (iv) intentional and continued failure to substantially perform her duties under this Agreement, subject to Section 6(b) of this Agreement.

7. **Termination Obligations**

a. **Return of COH's Property.** Peck hereby acknowledges and agrees that all personal property, including, without limitation, all books, manuals, records, reports, notes, contracts, lists, blueprints, and other documents, or materials, or copies thereof, and equipment furnished to or prepared by Peck in the course of or incident to her employment, belong to COH and shall be promptly returned upon termination of Peck's employment.

b. **Cooperation in Pending Work.** Following any termination of Peck's employment, she shall fully cooperate with COH in all matters relating to the winding up of pending work on behalf of COH and the orderly transfer of duties to her successor. Peck shall

also cooperate in the defense of any action brought by a third party against COH that relates in any way to Peck's acts or omissions while employed by COH. If Peck's cooperation in the defense of any such action requires more than ten (10) hours of her time, Peck and COH shall agree on appropriate remuneration for her time and expenses.

8. **Annual evaluation**

Peck shall be given an annual performance evaluation in October of each year, and shall be eligible for a salary increase at that time as approved by the COH. Such evaluation shall be based upon performance standards developed jointly by the Henderson Mayor and City Council and Peck.

9. **Bonuses**

Subject to the results of the annual evaluation set forth in paragraph 8 herein, Peck shall be eligible for a bonus as approved by the COH Council.

10.. **Notices**

All notices or other communications required or permitted hereunder shall be made in writing and shall be deemed to have been duly given if delivered by hand or mailed, postage prepaid, by certified or registered mail, return receipt requested, and addressed to COH and to Peck. Peck's address is set forth on the signature page to this Agreement.

Peck and COH shall be obligated to notify the other of any change in address. Notice of change of address hall be effective only when made in accordance with this Section.

11. **Vehicle Allowance**

Peck shall be paid in addition to all compensation herein, a vehicle allowance of Seven Hundred and Fifty Dollars ($750.00) per month during the term of this Agreement. Said

amount may be adjusted based on the price of energy through mutual consent of the parties.

12     **Cost of Living Adjustment**

The City Manager shall be entitled to automatic cost of living salary increases in the amount of 5% of the salary set forth in sub paragraph (a) herein commencing on the annual anniversary dates of the Effective Date.

13.     **Entire Agreement**

This Agreement is intended to be the final, complete, and exclusive statement of the terms of Peck's employment by COH. This Agreement supersedes all other prior and contemporaneous agreements and statements pertaining in any manner to the employment of Peck; and it may not be contradicted by evidence of any prior or contemporaneous statements or agreements. To the extent that the practices, policies, or procedures of COH, now or in the future, apply to Peck and are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control.

14.     **Amendments, Waivers**

This Agreement may not be modified, amended, or terminated except by an instrument in writing, signed by Peck and by a duly authorized representative of COH other than Peck. No failure to exercise and no delay in exercising any right, remedy, or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy, or power provided herein or by law or in equity.

15. **Severability; Enforcement**

If any provision of this Agreement, or the application thereof to any person, place, or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to the parties hereto, or other persons, places, and circumstances shall remain in full force and effect.

16. **Governing Law**

The validity, interpretation, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the law of the State of Nevada.

17. **Arbitration**

Any claim or controversy between Peck and COH arising under or in connection with this Agreement shall be settled by arbitration in accordance with the then current Employment Dispute Resolution Rules of the American Arbitration Association and shall be the exclusive remedy for all disputes including but not limited to Peck's compensation.. COH and Peck agree that arbitration shall be held in or near Clark County, Nevada, and the arbitrator shall have authority to award or grant legal or equitable remedies. The decision of the Arbitrator shall be final and binding. .

This Agreement to arbitrate survives termination of Peck's employment.

In any dispute arising under or in connection with this Agreement, the prevailing party shall be entitled to recover all costs and reasonable attorney's fees.

18. **General Expenses**

COH recognizes that certain expenses of a non-personal and generally job affiliated nature are incurred by Peck and hereby agrees to pay said general expenses in an amount not to exceed Two Thousand Dollars ($2,000.00) per month (Twenty Four Thousand Dollars ($24,000.00) per year).

19. **Retirement**

In addition to the COH contribution to Peck's retirement account, Peck shall be eligible for participation in the Nevada Public Employees Retirement System (PERS) as part of the Employees Benefit and Executive Compensation Plan. In addition to those benefits, employee Peck shall have an additional six (6) months PERS credit purchased for her after completion of each year of service.

20. **Acknowledgment of Parties**

The parties acknowledge (a) that they have consulted with or have had the opportunity to consult with independent counsel of their own choice concerning this Agreement, and (b) that they have read and understand the Agreement, are fully aware of its legal effect, and have entered into it freely based on their own judgment and not on any representations or promises other than those contained in this Agreement.

//

//

//

//

//

21. **Date of Agreement**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

_[signature]_

Mary Kay Peck
Address: 933 Pyrite
        Henderson, Nevada 89015-3059

City of Henderson, Nevada

_[signature]_

James B. Gibson, Mayor

ATTEST:

_[signature]_

Monica Simmons, City Clerk

COUNCIL ACTION
OCT 1 6 2007

APPROVED AS TO FORM:

_[signature]_

Shauna M. Hughes, City Attorney