NORMAN H. KIRSHMAN, P.C.
Nevada Bar Number: 2733
3800 Howard Hughes Parkway, Ste. 500
Las Vegas, NV 89169
Telephone: (702) 699-5917
Facsimile: (702) 369-5497
Attorney for *Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY KAY PECK, an individual;<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF HENDERSON, a municipality; JAMES B. GIBSON, an individual; JACK CLARK, an individual; ANDY HAFEN, an individual; STEVE KIRK, an individual; GERRI SCHRODER, an individual; and DOES 1 through 25.<br><br>Defendants. | CASE NO.: 2:09-cv-872<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

I. **INTRODUCTION**

Defendants' Motion is notable for material factual inaccuracies and a plethora of case citations, most of which are factually inapposite, or support Plaintiff's claims.

Plaintiff agrees with Defendants' dissertation on the distinction between Rule 12(b) and Rule 12(c) Motions. Inasmuch as both Defendants and Plaintiff have provided evidence in support of challenged allegations, Plaintiff requests the Court treat Defendants' Motion as a

Motion for Summary Judgment, and Plaintiff's Response as a combined Opposition and Cross Motion for Summary Judgment. Fed.R.Civ.P. 12(d).

## II. DEFENDANTS' FACTUAL AND LEGAL ERRORS

A. Defendants' assertion that Plaintiff's First Claim For Relief "is based solely upon respondeat superior liability" (Motion, pg. 4, lines 24-25) is misplaced. Defendants cite to Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 691 (1978); but omit the following caveats in Monell at pages 694 and 695:

"..., it is <u>when execution of a government's ... policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983</u> ... We have attempted only to sketch so much of the §1983 cause of action against a local government as is apparent from the history of the 1871 Act and our prior cases, and we expressly leave further development of this action to another day." Id. 695 (Emphasis added).

The record is clear! On April 14, 2009, the statements and votes of the Councilmembers "... may fairly be said to represent ... " COH "official policy" which injured Plaintiff. That "policy" was to remove the City Manager who at recent meetings with individual

- 2 -

Councilmembers and the Mayor, expressed concerns about the proposed use of "Land Fund" monies to finance the Henderson Space and Science Center ("Science Center"). (Peck Declaration).

Compounding the selective and misleading reference to Monell, Defendants fail to acknowledge the allegations of the First Amended Complaint that the termination of Plaintiff was coordinated and executed by the unanimous vote of the City of Henderson ("COH") Council ("Council"), the body that governs the COH. The same body that in October 2007 unanimously approved the Employment Agreement (the "Agreement") with Plaintiff (First Amended Complaint ("Amended Complaint"), Exhibit A); and took no action to exercise the City's right to terminate the Agreement at the end of the first year; and by unanimous vote on April 14, 2009 terminated the employment of Plaintiff, FOR CAUSE. (Amended Complaint, Exhibit B, the transcript of April 14, 2009, provided to Plaintiff's counsel by COH)

Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002), cited by Defendants involved a claim against the County Coroner and the County based upon the alleged conduct of the County Coroner falsifying an autopsy report.[1] On the issue of "immunity", the Plaintiff's claims that the Coroner's reckless disregard for the truth, which conformed to County policy, custom or practices, were found by the Court to be sufficient to withstand a motion to

---

[1] Galbraith, id., did however state without equivocation, except that in cases pleading fraud or mistake, civil rights complaints need only satisfy the simple requirement of Rule 8(a).

- 3 -

dismiss and stated "a Monell claim against the Coroner and the County." Id., 1127.  Galbraith, id, supports Plaintiff's §1983 claim, as Plaintiff's employment was terminated by the Council in its' zeal to execute a potentially unlawful policy, <u>donation of $21,000,000 of COH funds to a non-profit enterprise, a Science Center and museum,</u> substantially controlled by a high ranking Councilmember, Jack Clark, the Mayor, James Gibson, the COH City Attorney, Shauna Hughes, and Steve Hanson, the COH Finance Director.  Except for Steve Hanson, the foregoing COH officials were scheduled to sever their ties with the COH almost immediately after the unanimous endorsement by the Council of the Science Center project at a public meeting on March 17, 2009 ( Exhibit A ).  Plaintiff's Performance Evaluation was also on the March 17, 2009 Council Meeting Agenda, but was continued at the request of Council to April 14, 2009..

    B.    <u>Plaintiff's Property and Liberty Interests Were Violated</u>

        1.    <u>Plaintiff's Property Interest was established by the Agreement.</u>[2]

Defendants point to the provision for "Termination By COH, Not For Cause" (Amended

---

[2] Plaintiff's Response notes the Agreement at Paragraph 7 provides for binding arbitration as the "exclusive remedy for all disputes including but not limited to Peck's compensation." (Amended Complaint, Exhibit A). Plaintiff filed for Arbitration following the Council's termination of her employment for cause and identified the dispute as covering Plaintiff's rights under the Agreement and 42 U.S.C. 1983. Following discussion with Defendants' counsel, it was agreed that both disputes would be filed with this Court, the Arbitration demand was withdrawn and a stipulation was entered into preserving the parties' right to arbitrate the contract issue should the Court decline to exercise supplemental jurisdiction. (Exhibit B, Stipulation.) Accordingly, Plaintiff has not waived the right to litigate the contract issue either as a supplemental state claim or in an arbitration forum if Plaintiff's 1983 claims are dismissed and the Court exercises its discretion to defer the state claim to arbitration. Plaintiff submits the claims addressing the Agreement and §1983 are so intertwined that a single forum for both is necessary (Kirshman Declaration).

- 4 -

Complaint, Exhibit A, Paragraphs 5(c) and 1(b), as creating an "at will" employment relationship. Plaintiff will demonstrate herein that the City's right to terminate pursuant to Paragraph 1(b) required Notice in writing to Plaintiff "at least 90 days prior to the first anniversary expiration date, of the intention by the Council to terminate the employment relationship" was waived by the City as no such Notice was given by the Council or otherwise received by Mary Kay Peck. (Peck Declaration). In fact, unless the March 17, 2009 and April 14, 2009 Agenda Items qualify as Notice to Terminate, a proposition Plaintiff disputes given Defendants' failure to inform Plaintiff "at least 90 days prior to the anniversary date," or evaluate Plaintiff's job performance before the orchestrated round-robin on April 14, 2009, replete with hearsay reports by unidentified declarants who comprised the "culture of fear" Councilmember Jack Clark characterized as the product of Plaintiff's alleged management style, the assertion that the Agreement incorporated an "at will" status, has no substance.

Paragraph 5(c) also provides Defendants with the right to "terminate Peck's employment without cause . . . by providing Peck thirty (30) days' advance written notice and further provided that Peck shall, in addition to all compensation due and owing through the last day actually worked, receive . . . a severance payment equal to the balance of three (3) year term of this Agreement at her then current Base Compensation rate; in addition to all sick leave and annual leave accrued." Here again, Defendants waived the right to terminate Peck without cause; and in an attempt to avoid the substantial financial obligation required by 5(c) to pay to Plaintiff a

sum of money equal to the balance of her compensation through the Agreement's stated termination date, arbitrarily selected the "for cause" option.. Thereafter, the Council, every member participating, engaged in a Star Chamber[3] proceeding affording neither Plaintiff nor her attorney notice of the accusations leveled against her, or an opportunity to respond before proceeding with the execution and termination for cause. Consistent with the Council's rush to approve a Twenty-One Million Dollar ($21,000,000) gift from the COH Land Fund to the non-profit corporation that would own and control the Science Center before the exit of Defendants Gibson and Clark, both of whom were term limited, and had already been designated as officers, President and Director James Gibson and Director Jack Clark, along with Steve Hanson as Treasurer, with Shauna Hughes, recently retired as COH City Attorney, slated to be the lawyer for the Center, the business of eliminating Plaintiff who had expressed concerns about the Science Center in or about March 2009, was expedited. (Exhibits C & D).

**Each provision of the Employment Agreement providing for termination not for cause imposes conditions precedent.**

//

//

---

[3]"Star Chamber. An English court having broad civil and criminal jurisdiction at the king's discretion and noted for its secretive, arbitrary, and oppressive procedures, including compulsory self-incrimination, inquisitorial investigation, and the absence of juries." *Black's Law Dictionary*, 8th Edition, Thomson West, 2004, pg. 1442.

- 6 -

Paragraph 1(b):

"Annual Renewal. At the expiration of each anniversary year of the three (3) year term, this Agreement shall automatically extend for an additional three-year period unless the Council duly convened following required Notice in writing to the contrary at least 90 days prior to the anniversary expiration date, of the intention by the Council to terminate the employment relationship." (Amended Complaint, Exhibit A) Given Defendants' action terminating Plaintiff on the record "for cause", and failure to utilize the "Not For Cause 5(c) option or the 1(b) option, Plaintiff's damages pursuant to the "benefit of the bargain" principle requires a termination date of October 16, 2011; and highlights Plaintiff's property interest.

Defendants did not elect to terminate Plaintiff "Not For Cause." On April 14, 2009, Defendants elected to terminate Plaintiff "For Cause." Accordingly, Defendants' "at will" employment assertions are not relevant, and Defendants must live with their option and establish "cause" as defined by the Agreement, at a hearing consistent with due process.

Defendants' failure to satisfy the conditions precedent at any time during Plaintiff's employment by COH will be discussed hereinafter, but is adequately alleged in the Amended Complaint, supported by the Peck Declaration and documentary evidence referred to herein.

The cases cited by Defendants as support for their contention Plaintiff had no property interest in her position as Henderson City Manager, demonstrates the absence of substance to their defense.

Van Dyke v. East Shoshone Hospital District, 34 F.3d 1075 (9th Cir. 1994; an Unpublished Opinion, 1994). This unpublished opinion fails to qualify for any exception provided by 9th Circuit rule 36-3, and was deemed appropriate for submission without oral argument. Plaintiff will not dignify the case. Suffice to say the decision is correct, but the facts bear no resemblance to the case at bar.

Downing v. City of Lowell, 741 N.E.2d 469 (Mass.App.Ct. 2001), dealt with a suit for declaratory judgment and analyzed the interaction between a Massachusetts statute and Plaintiff's contract with the City of Lowell. The Court held the enhanced job security provided by the statute did not apply to Plaintiff who had been reclassified as a "contractual employee" and nonrenewal of his contract did not equate to termination prior to the expiration of the contractual period. Downing, id. involved no §1983 issues.

R.M. Jackson v. Housing Authority For The Parish of St. James, 926 So.2d 606 (La.App. 5th Cir., 2006), addressed a suit alleging breach of a contract, which provided the employer authority to "discontinue the employment of the employee at the conclusion of the term . . ." set forth in the Contract. Severance was specified and Plaintiff therein was paid. Plaintiff's case was dismissed. Here again, the cited case is inapposite.

Poteat v. Harrisburg School District, 33 F.Supp.2d 384 (U.S. District court, M.D. Pa, 1999), considered Defendants' Motion for Summary Judgment and decided that Plaintiff had neither liberty nor property interests in his employment. The employment agreement "allowed the Board 'at any time' to dissolve it (and thereby discharge Plaintiff as superintendent) upon payment of a certain sum of money."

The Board exercised that authority, made the required payment and disposed of the "property interest issue."

The Court examined the "Liberty" interest claim in depth and because Plaintiff was in a policy making position and the statement made at or about the time of the discharge did not rise to the level of stigmatizing comments that could reasonably be perceived as impairing Plaintiff's ability to obtain future employment, i.e. "Charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge." Id. 393.

Also mischaracterized by Defendants is Paul v. Davis, 424 U.S. 693 (1976), as supportive of its contention that "during her termination Plaintiff's liberty interest . . . " was not violated when "Plaintiff's integrity, character, loyalty and competence were falsely impugned."

In Paul, id., Plaintiff's constitutional claim was viewed as a state defamation action. Paul was neither prosecuted nor terminated. To add insult to injury, Defendants paraphrased out of context the message sent by the Supreme Court, (Defendants'

- 9 -