1  William E. Cooper, Esq.
   William E. Cooper Law Offices
2  Nevada Bar No. 2213
   601 E. Bridger Avenue
3  Las Vegas, Nevada 89101
   Telephone: (702) 382-5111
4  Facsimile: (702) 382-2170

5  Attorney for *Defendants*

6

7

8                IN THE UNITED STATES DISTRICT COURT

9                    FOR THE DISTRICT OF NEVADA

10

11

12  MARY KAY PECK, an individual,              )    2:09-CV-00872-JCM(GWF)
                                               )
13                            Plaintiff,        )
                                               )    **DEFENDANTS' REPLY BRIEF**
14         -vs-                                 )    **IN SUPPORT OF MOTION**
                                               )    **FOR JUDGMENT ON THE**
15  THE CITY OF HENDERSON, a municipality;      )    **PLEADINGS**
    JAMES B. GIBSON, an individual; JACK        )
16  CLARK, an individual; ANDY HAFEN, an        )    **(Fed.R.Civ.P. 12(c))**
    individual; STEVE KIRK, an individual; GERRI )
17  SCHRODER, an individual; and DOES 1 through  )
    25.                                         )
18                            Defendants.        )
                                               )
19  _____

20         COMES NOW, Defendant City of Henderson and the above-named individual Defendants

21  James B. Gibson, Jack Clark, Andy Hafen, Steve Kirk and Gerri Schroder, by and through their

22  attorney William E. Cooper, Esq., and file their reply brief in support of Defendants' Motion for

23  Judgment on the Pleadings.

24  **I.    INTRODUCTION.**

25         What is unique about Plaintiff's Response brief is the fact that it is devoid of any legal

26  authority in opposition to most of the various grounds for dismissal set out in Defendants' Rule 12(c)

27  motion.  This is particularly true in regards to the individual Defendants' claim of entitlement to

28  qualified immunity.   Plaintiff does not contest Defendants' right to qualified immunity.

                                          1

Accordingly, the court should find that the individual Defendants are protected from suit by the doctrine of qualified immunity and Plaintiff's First and Second Claims for Relief should be dismissed for failure to state a claim.

## II. PLAINTIFF SHOULD NOT BE ALLOWED TO UNILATERALLY CONVERT DEFENDANTS' FED.R.CIV.P. 12(c) MOTION TO A MOTION FOR SUMMARY JUDGMENT. PLAINTIFF'S OUTSIDE EVIDENCE SHOULD BE EXCLUDED.

Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings includes additional documents that were not attached to or incorporated into the pleadings. Plaintiff also advances new contentions of fact and a new theory of the case as to why Defendants' voted to terminate Plaintiff's Employment Agreement. The new contentions of fact, new theory of the case and new documents are not part of the pleadings. Because they are not part of the pleadings, they are not properly before the court and should be excluded. A Rule 12(c) motion simply challenges the legal sufficiency of the opposing party's pleadings. Judgment on the pleadings is appropriate when, even if all material facts in the pleadings under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *R.J. Corman Derailment Services LLC v. Int.'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

Defendants filed a Rule 12(c) Motion for Judgment on the Pleadings, not a motion for summary judgment. In Plaintiff's Response to the Rule 12(c) motion, Plaintiff unilaterally and intentionally attempts to convert the Rule 12(c) motion into a motion for summary judgment by attaching documents, declarations and advancing new factual contentions in the responsive brief that are not alleged in or attached to the First Amended Complaint. Plaintiff does so based on the contention that "both Defendants and Plaintiff have provided evidence in support of challenged allegations...". See, Response Brief, pg. 1, lines 25-27. This is not true. The propriety of attaching documents to a complaint and to a Rule 12(c) motion without converting the motion to a motion for summary judgment was briefed for the court in Defendants' Rule 12(c) motion. See, Section III of Defendants' motion. The "evidence in support of challenged allegations" are merely the documents that were attached to and incorporated into the pleadings. Plaintiff attached as exhibits and incorporated into her First Amended Complaint, Mary Kay Peck's Employment Agreement and two

transcripts from the April 14, 2009 City Council Meeting. Pursuant to Fed.R.Civ.P. 10(c), a copy of a written instrument **attached to a pleading** is a part of the pleading for all purposes. Thus, the attachment of documents to Plaintiff's First Amended Complaint does not convert a Rule 12(c) motion to a motion for summary judgment., as alleged by Plaintiff. This "incorporation by reference" doctrine allows the court to look at documents which are attached to the pleadings without converting a Rule 12(c) motion into a motion for summary judgment. *Hal Roach Studios Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, fn 19 (9th Cir. 1989).

Defendants also attached two documents to their Rule 12(c) motion; a stipulation between the Plaintiff and Defendants in which Plaintiff waived her right to proceed directly to arbitration under the Employment Agreement, and a copy of the same Employment Agreement that Plaintiff attached to the First Amended Complaint. These documents do not constitute matters outside the pleadings under Ninth Circuit law. This is so, because the Ninth Circuit has extended the "incorporation by reference" doctrine to those situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005). See also, *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superceded by statute, *Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) (when a document attached to a motion to dismiss is **integral** to the plaintiff's claim and its authenticity is not disputed, the plaintiff is on notice of the contents of the document and the need for a chance to refute the evidence is greatly diminished).

Plaintiff's Employment Agreement that was attached to Defendants' Rule 12(c) motion had already been attached and incorporated into Plaintiff's First Amended Complaint and was part of Plaintiff's pleading. The Employment Agreement specifically references the fact that Plaintiff's exclusive remedy for any dispute arising under the Employment Agreement was binding arbitration pursuant to Paragraph 17 of the Agreement. As such, Plaintiff's stipulation to waive the right to proceed directly to arbitration is **integral to her §1983 liberty claim** and the issue of whether the stipulation constitutes a waiver of Plaintiff's right to a name-clearing hearing through the arbitration

process, which is her remedy for any violation of a protected liberty interest. Thus, the stipulation relates exclusively to a term of her Employment Agreement, is integral to her liberty due process claim, and there is no dispute as to the authenticity of the document. As such, none of the documents attached to the First Amended Complaint or to Defendants' Rule 12(c) motion constitute outside extrinsic evidence under Ninth Circuit law.

It is academic that only when matters outside the pleadings are presented to **and not excluded by the court**, must a Rule 12(c) motion be treated as one for summary judgment under Rule 56. See, Fed.R.Civ.P. 12(d). Accordingly, Defendants ask the court to deny Plaintiff's unilateral request and intentional effort to convert Defendants' Rule 12(c) motion to a Rule 56 motion, and further request that the court exclude from consideration the documentary evidence, new factual contentions and new theory of the case that are contained in and attached to Plaintiff's response. The allegations and documents which should be excluded are identified more specifically on the document attached hereto as Exhibit 1.

## III. PLAINTIFF CANNOT DISPUTE THAT PLAINTIFF HAS FAILED TO MEET HER BURDEN OF PROOF ON QUALIFIED IMMUNITY.

### A. Qualified Immunity Does Not "Turn on the Evidence Presented in Respect to the Substantive §1983 Issues" as Alleged by Plaintiff.

**Plaintiff does not oppose or dispute** with any legal authority the fact that the individual Defendants are protected from suit by the doctrine of qualified immunity. Plaintiff's response **does not oppose or dispute** Defendants' points and authorities in Section V of Defendants' Rule 12(c) motion as to why the doctrine of qualified immunity applies to the facts of this case and precludes suit against the individual Defendants. Under LR 7-2(d), the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion. Here, Plaintiff's response to Defendants' Rule 12(c) motion is **devoid of any points and authorities addressing the application of the doctrine of qualified immunity** to the individual Defendants, who at all relevant times were City officials and members of the City of Henderson City Council.

///

///

4

Instead of opposing the application of qualified immunity to the facts of this case, Plaintiff instead argues that the doctrine of **absolute** immunity is not available to the individual Defendants. See, Response Brief, Section 6. Whether the doctrine of absolute immunity is available or not is **totally irrelevant** to the assertion by Defendants that they are protected by **qualified** immunity. Defendants' Rule 12(c) motion does not assert any claim that the Defendants are also protected by absolute immunity. The immunity being asserted in Defendants' Rule 12(c) motion is limited strictly to that of qualified immunity.

The only reference in Plaintiff's brief to the applicability of qualified immunity is at page 5, lines 1-3, wherein Plaintiff states that "Defendants' contention they are protected by qualified immunity will turn on the evidence presented in respect to the substantive §1983 issues". That is the extent of Plaintiff's argument on qualified immunity. Plaintiff makes no other argument and **fails to cite any legal authority showing that qualified immunity does not apply to the facts of this case**. Plaintiff does not dispute the points and authorities advanced by Defendants in Section V of their Rule 12(c) motion which support the finding that Defendants are in fact protected by qualified immunity in this proceeding.

Plaintiff's contention that the applicability of qualified immunity "will turn on the evidence presented in respect to the substantive §1983 issues", shows a fundamental lack of understanding as to the procedure the court must follow in determining whether the protection of qualified immunity is available to Defendants. The determination as to the applicability of qualified immunity is **not an issue of fact** to be determined during the litigation of "the substantive §1983 issues". Rather, because qualified immunity is "an immunity from suit rather than a mere defense to liability. . .it is effectively lost if a case is erroneously permitted to go to trial". *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 2009 U.S.Lexis 591 (Jan. 21, 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis deleted)). The Supreme Court has made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery". *Pearson*, 129 S.Ct. at 815 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Accordingly, the court has repeatedly

stressed "the importance of resolving immunity questions at the earliest possible stage in litigation".

*Pearson*, 129 S.Ct. at 815 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. When faced with a 12(b)(6) or (c) motion, the court must first decide whether the facts alleged in plaintiff's complaint make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is always applicable unless the official's conduct violated a clearly established constitutional right. *Anderson, supra*, 483 U.S. at 640.

In Pearson, the Supreme Court reconsidered Saucier's rigid two-step procedure because the initial determination of whether a plaintiff's constitutional right has been violated may result in unnecessary litigation of constitutional issues, thereby defeating the purpose that qualified immunity was intended to be an immunity from suit. *Pearson*, 129 S.Ct. at 817. The *Pearson* court said:

> *Saucier's* two-step protocol "disserve[s] the purpose of qualified immunity" when it "forces the parties to endure additional burdens of suit—such as the costs of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily."

*Id*. (Quoting *Brief of Nat. Assn. Of Criminal Defense Lawyers as Amicus Curiae 30*).

The *Pearson* court was concerned about applying the *Saucier* rigid two-step rule at the pleading stage when the precise factual basis for the plaintiff's constitutional claim or claims may be hard to identify. The court was concerned that the answer to whether there was a violation of plaintiff's constitutional right may depend on a kaleidoscope of facts not yet fully developed. *Id.*, 129 S.Ct. at 819. Accordingly, the Pearson court determined that the sequence of the Saucier two-step analysis was **not mandatory** and that lower courts have the discretion to determine in the first instance whether the alleged conduct of the defendants violated clearly established law before making a determination as to whether plaintiff's constitutional right was violated. *Id.*, 129 S.Ct. at 821-822. If a government official did not violate clearly established law then the official is entitled

6

to qualified immunity even if plaintiff's constitutional right was violated by the official's conduct. In accord, *Tibbetts v. Kulongoski*, 2009 U.S.App.Lexis 11665 (9th Cir. May 29, 2009).

Based on the foregoing, the determination of whether qualified immunity applies to this case is a simple matter. The court merely determines in the first instance under the facts of this case whether the action of the City Council in terminating Plaintiff's Employment Agreement violated clearly established law. This is where Plaintiff's failure to oppose Defendants' qualified immunity claim becomes significant. **Plaintiff bears the burden of establishing that the rights allegedly violated were clearly established at the time of Defendants' actions**. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994); *Gallegos v. City of San Gabriel*, 1995 U.S.App.Lexis 27347 *10 (9th Cir. Sept. 14, 1995) *Sawyer v. Johansen*, 1996 U.S.App.Lexis 32884 *6 (9th Cir. Dec. 6, 1996); *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989) (unless and until the plaintiff is able to make the required showing that defendant's conduct violated a "clearly established" right, the government official is properly spared the burden and expense of proceeding any further). Thus, the only issue before the court on a motion to dismiss based on qualified immunity is whether a plaintiff has met his or her burden of establishing that the rights allegedly violated were clearly established at the time of Defendants' actions. If the plaintiff fails to carry this initial burden, the defendant is entitled to immunity. *Conkey v. Reno*, 885 F.Supp. 1389, 1391-1392 (D. Nev. 1995). Thus, the determination of whether a constitutional right was clearly established at the time of the incident presents a **pure question of law**. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (reliance is on the objective reasonableness of an official's conduct, as measured by reference to clearly established law); *ACT Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir. 1993).

Plaintiff has alleged a conspiracy by the individuals. However, Plaintiff has failed to come forward with any legal authority supporting the fact that the inclusion of a conspiracy allegation in the First Amended Complaint undermines Defendants' claim to qualified immunity. Plaintiff's assertions of conspiratorial purpose amount to no more than unsupported allegations of malice. More than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy is required to defeat qualified immunity for conduct which, absent that state of mind, would be constitutionally acceptable or protected by immunity. A conclusory and

7

unsupported allegation of conspiratorial purpose fails to defeat an assertion of qualified immunity by a defendant otherwise entitled to that defense. *Myers v. Morris*, 810 F.2d 1437, 1453, 1987 U.S.App.Lexis 1650 (8th Cir. Feb. 3, 1987); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (allegations that a conspiracy produced a certain decision should no more pierce the actors absolute immunity than allegations of bad faith, personal interest or outright malevolence). The standard for determining qualified immunity is the objective reasonableness of an official's conduct measured by reference to clearly established law. Thus, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1182 (5th Cir. 1990). Even if Defendants' conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable.

**B.    Plaintiff Does Not Dispute That the Conduct of the City Council was Objectively Reasonable.**

Plaintiff does not dispute or otherwise contest that the facts of this case, as set out in the pleadings, are as follows: 1) Plaintiff had a written Employment Agreement with the City; 2) under the terms of the Employment Agreement the City Council could terminate Plaintiff with or without cause, or could refuse to renew the contract; 3) Nevada law required the City Council to discuss their concerns about Peck's work performance on the record at a public hearing. NRS 241.021(1)(b); 4) Comments made about Plaintiff's job performance were absolutely privileged under Nevada law and could not be used to impose liability for defamation, or used to constitute a ground for recovery in any civil action. NRS 241.0353; and, 5) the City Council was represented by legal counsel at the meeting who provided legal advice to the Council members on the termination options that were available to the Council under the Employment Agreement.

Plaintiff has failed to meet her burden of presenting the court with any authority whatsoever showing that under the circumstances of this case, a reasonable City Council would have recognized that a clearly established constitutional right was being violated. Indeed, Plaintiff has failed to

/ / /

/ / /

8

produce any authority whatsoever on the qualified immunity issue. Therefore, the individual Defendants are protected by qualified immunity as a matter of law and Plaintiff's Second Claim for Relief must be dismissed with prejudice. See, *Conkey*, 885 F.Supp. at 1391-1392.

## IV. THIS IS A SIMPLE BREACH OF CONTRACT CASE WHICH DOES NOT RISE TO A CONSTITUTIONAL VIOLATION.

### A. Plaintiff Has No Property Interest in Continued Employment.

To state a claim for the violation of due process, Plaintiff must demonstrate that she had a property interest in continued employment. See, cases cited in Section IV (B) of Defendants' Rule 12(c) Motion for Judgment on the Pleadings. This Plaintiff has failed to do. Although Plaintiff apparently, but erroneously, believes that all the cases cited by Defendants in support of their Rule 12(c) motion are somehow "inapposite", that is not the case. To show the difference in the law between the *Roth* and *Loudermill*-type employment termination cases, which involve the employment of tenured classified public employees, and contract employees, where the terms and conditions of employment are set out in the four corners of a written employment contract, Defendants cited the court to a series of contract cases including *Poteat v. Harrisburg Sch. Dist.*, 33 F.Supp.2d 384 (M.D. Pa. 1999) (no property interest in continued employment despite a "for cause" termination provision in the employment contract because the board also had the right to dissolve the contract at any time without cause. Therefore, no due process violation. Only process due was the payment of monies owed under the contract); *Downing v. City of Lowell*, 741 N.E.2d 469 (Mass. App. 2001) (no due process violation because the Superintendent had the right not to renew the contract, so plaintiff had no property interest in continued employment); *R.M. Jackson v. Housing Authority for the Parish of St. James*, 926 So.2d 606 (Ct. App. La. 2006) (no due process or constitutional issues and no property interest where contract provided that the employee could be terminated with or without cause).

Although Plaintiff alleges these cases to be "inapposite", Plaintiff has failed to come forward with any legal authority showing that the holdings of these cases are wrong. Thus, they are clearly relevant to the issue before the court. The foregoing cases were properly cited for the purpose of showing the distinction between *Roth* and *Loudermill*-type cases and cases involving contract

9

employees, who have provisions in their contracts giving the employer the option to terminate employment with or without cause, or by simply not renewing the contract. The existence of provisions providing for termination without cause and non-renewal in an employment contract, like Plaintiff's Employment Agreement, **do not create a property interest in continued employment that is protected by due process**. The aforementioned cases make clear that **the terms of an employment contract establish the law between the parties**. The fact that the provisions in Plaintiff's Employment Agreement allowed the City Council to terminate Plaintiff's employment with or without cause, or to not renew her contract, precluded Plaintiff from acquiring a constitutionally protected interest in continued employment. The existence of these provisions in Plaintiff's Employment Agreement, undermine the due process claim asserted in Plaintiff's First Claim for Relief.

In response to Defendants' contention that Plaintiff does not have a protected property interest in continued employment, Plaintiff attempts to fabricate a constitutional right to continued employment with the **novel theory** that because both the non-renewal provision at Paragraph 1(b) and the termination provision at Paragraph 5(c) of Plaintiff's Employment Agreement contain notice provisions and, because Plaintiff was not given notice of the intent to terminate her employment, Plaintiff contends that Defendants have somehow waived the right to terminate Plaintiff **without cause**. Of course, **Plaintiff has failed to support this novel theory with any legal authority whatsoever**, because there is no authority supporting this contention. Plaintiff also ignores the fact that the right to receive notice of termination without cause, or notice of non-renewal, is a right derived solely from the terms of the contract itself, not from the Due Process Clause. Plaintiff's novel theory takes us nowhere. Failure to give notice under the contract may present Plaintiff with a breach of contract claim under state law, but nothing more.

/ / /

/ / /

/ / /

/ / /

/ / /

**B.  Plaintiff Waived Her Right to a Pre-Termination Hearing under the Terms of Her Employment Agreement.**

In her response, Plaintiff complains that she did not receive notice and a pre-termination hearing consistent with that mandated by the Due Process Clause.  However, Plaintiff failed to come forward with any legal authority to oppose Defendants' contentions in Section IV (C) of Defendants' Rule 12(c) motion, wherein Defendants contend that Plaintiff waived the right to a pre-termination hearing by the terms of her Employment Agreement.  **The non-renewal provision at Paragraph 1(b)** of the Employment Agreement contains no requirement that the City Council afford Plaintiff a pre-termination hearing, provide notice of the allegations against her, provide Plaintiff an opportunity to respond to those allegations or provide Plaintiff with an opportunity to confront witnesses.

Similarly, Plaintiff does not dispute that the **termination without cause provision at Paragraph 5(c)** of the Employment Agreement gives the City the right to terminate Plaintiff's Employment at "any time" and for "any reason" not prohibited by law.  Again, there is no requirement that requires the City to provide Plaintiff a pre-termination hearing, notice of the allegations against her, an opportunity to respond to those allegations or an opportunity to confront witnesses.

Plaintiff also does not dispute that pursuant to the **termination for cause** provision set out in **Paragraph 6** of the Employment Agreement, Plaintiff agreed that the City could terminate Plaintiff's employment without cause **"at any time and without prior notice…"**.  The only process that was due for a termination for cause, as agreed upon by Plaintiff, was the payment to Plaintiff of "all compensation then due and owing" under the Employment Agreement.  Like the other termination provisions, there is no requirement under Paragraph 6 that requires the City to provide Plaintiff a pre-termination hearing, notice of the allegations against her, an opportunity to respond to those allegations or the right to confront witnesses.  **The termination for cause provision expressly waives any notice whatsoever**.  Thus, under the terms of the Employment Agreement, which were agreed upon by Plaintiff, if terminated for cause, Plaintiff waived any right she may otherwise have had to notice and a pre-termination hearing.

As support for the fact that Plaintiff voluntarily waived her right to due process under the terms of her Employment Agreement, Defendants cite a myriad of cases on pages 8-9 of Defendants' Rule 12(c) motion. These cases all support the fact that an individual has the right to waive the due process right to receive notice and hearing. **Plaintiff has failed to oppose or dispute these cases** with any legal authority whatsoever. **Plaintiff has simply failed to come forward with any legal authority in opposition to Defendants' contention that Plaintiff waived her right to a pre-termination hearing**, notice of the allegations against her, opportunity to respond to those allegations or an opportunity to confront witnesses. Plaintiff does not even attempt to assert that the cases supporting Defendants' due process waiver argument in Section C are somehow "inapposite". Thus, Plaintiff does not contest or dispute that she waived her due process right to a pre-termination hearing, notice of allegations against her, opportunity to respond and opportunity to confront witnesses, when she entered into the Employment Agreement.

For these reasons, Plaintiff's termination does not present a due process **property claim** cognizable under §1983. Instead she asserts only a breach of contract claim against the City for monetary damages.

**C.      Plaintiff Fails to State a Claim for Infringement of a Protected Liberty Interest.**

> **1)      the Statements by the City Council Did Not Rise to the Level of Accusations of "Moral Turpitude".**

Plaintiff has failed to come forward with any authority to refute or oppose Defendants' contention that Plaintiff's liberty interest was not violated. More specifically, Plaintiff does not dispute Defendants' contention, backed by Ninth Circuit law, that statements made against a terminated employee do no infringe a liberty interest unless the statements rise to the level of accusations of "moral turpitude", such as dishonesty or immorality. Plaintiff does not dispute that statements that do not reach this level of severity do not infringe constitutional liberty interests under Ninth Circuit law. The Ninth Circuit cases supporting this conclusion are set out in Section IV(D) of Defendants' Rule 12(c) motion. Plaintiff has not contested the holdings of these cases. Plaintiff's response provides no opposition whatsoever, makes no effort to distinguish these cases and cites no authority whatsoever to contradict the case law cited by Defendants. It is clear from a simple reading

of the statements in Paragraph 12 of the First Amended Complaint, that the job performance statements allegedly made by the individual Defendants when discussing Plaintiff's work performance at the public hearing did not rise to the level of "moral turpitude" and therefore, although the statements may have "impugned" Plaintiff's reputation, as alleged in Paragraph 16 of the First Amended Complaint, that fact alone is not enough to violate her liberty interest under the Due Process Clause. Defamation alone, does not itself work a deprivation of liberty. *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Plaintiff's response does not dispute that the Ninth Circuit distinguishes between a stigma of moral turpitude, which infringes the liberty interest, and a charge of incompetence or inability to get along with coworkers which does not. *Stretten v. Wadsworth Veteran's Hosp.*, 537 F.2d 361, 1976 U.S.App.Lexis 11283 (9th Cir. May 18, 1976). Thus, charges made against a terminated employee do no infringe a liberty interest unless they rise to the level of accusations of "moral turpitude", such as dishonesty of immorality, which belittle a person as an individual. **Labeling an employee as incompetent or otherwise unable to meet an employer's expectations does not infringe an employee's liberty interest**. *Id.*, 537 F.2d at 366. Again, the statements set out in Paragraph 12 of the First Amended Complaint do not rise to the level of "moral turpitude" and therefore did not violate Plaintiff's liberty interest. The statements relate solely to Plaintiff's inability to perform satisfactorily in the position of City Manager. Plaintiff has not opposed or otherwise contested this fact.

> **2)      No Right to a Name-clearing Hearing If Plaintiff Failed to Allege That the Statements in Paragraph 12 of the First Amended Complaint Were Substantially False.**

In her response, Plaintiff alleges that the "reckless disregard for the truth" allegation in Paragraph 20 of the First Amended Complaint is sufficient to plead that the statements in Paragraph 12 are false. However, the allegation in Paragraph 20 does not affirmatively assert that each of the statements set out in Paragraph 12 of the First Amended Complaint are, in fact, substantially false. In the absence of such an allegation, Plaintiff is not entitled to a name-clearing hearing under the Due Process Clause. As the court said in *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977):

> But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation. Nowhere in his **pleadings or elsewhere** has respondent affirmatively asserted that the report of the apparent suicide attempt was **substantially false**. Neither the District Court nor the Court of Appeals made any such finding. When we consider the nature of the interest sought to be protected, **we believe the absence of any such allegation or finding is fatal to respondent's claim** under the Due Process Clause that he should have been given a hearing.

*Codd*, 429 U.S. at 627 (emphasis added); In accord, *Campanelli v. Bockrath*, 100 F.3d 1476, 1484, 1996 U.S.App.Lexis 30237 (9th Cir. Nov. 22, 1996) (to state a due process claim, plaintiff **must allege** that the defendant's statements were substantially false).

The failure of Plaintiff to affirmatively allege in the First Amended Complaint that each of the statements set in Paragraph 12 of the First Amended Complaint are **substantially false** is fatal to the continued viability of Plaintiff's claim that Defendants violated her protected liberty interest by deny her the right to a name-clearing hearing.

### 3). Plaintiff Waived Her Right to a Name-Clearing Hearing.

In response to Defendants' claim that Plaintiff waived her right to a name-clearing, Plaintiff engages in a circuitous argument in Paragraph 4 of her response brief that takes her nowhere. She admits that the arbitration provision in the Employment Agreement provided her with an avenue to clear her name. She admits that she elected to waive her right to clear her name at the arbitration hearing by stipulating to stay the arbitration process so she could go to federal court to file a §1983 action to seek damages for failing to get a name-clearing hearing. Plaintiff's position is absurd. It is notable that Plaintiff does not oppose or dispute with any legal authority, the cases cited by Defendants which stand for the undisputed proposition that if a person is afforded the **opportunity** to be heard at a name-clearing hearing to respond to the allegations against her, her liberty rights are not violated. *Robinson v. County of Lancaster, Conestoga View Nursing Home*, 2005 U.S.Dist.Lexis 36375 *8 (E.D. Pa. Dec. 28, 2005) (quoting *Graham v. City of Philadelphia*, 402 F.3d 139, 144 (3rd Cir. 2005) (plaintiff's appeal of termination and subsequent hearing on appeal overcame any liberty interest claim).

/ / /

**It is the denial of a name-clearing hearing** that causes the deprivation of a liberty interest without due process. Here, Plaintiff was afforded an opportunity for a name-clearing hearing through the arbitration process but elected not to do so. **Defendants never denied her the opportunity to do so**. *Wojcik v. Mass State Lottery Comm'n*, 300 F.3d 92, 103 (1st Cir. 2002) (to establish claim for liberty deprivation the government must have **failed to comply with employee's request** for name-clearing hearing); *Holscher v. Olson*, 2008 U.S.Dist.Lexis 50057 (E.D. Wa. Jun. 30, 2008) (plaintiff's liberty claim is properly denied **if she failed to request a name-clearing hearing**). In *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006) the court said:

> Nothing in our jurisprudence suggests that a government employee can legitimately sue for deprivation of the right to a post-termination hearing where he never asserted the right before suing for damages. Allowing an employee to claim damages for being deprived of a hearing never requested would greatly expand government employers' potential liability and force such employers prophylactically to offer name-clearings when it is not at all clear that the employee is entitled to--or even desires--one. It would also reward employees for lying in wait and later asserting a right that the employer had no reason to suspect the employee wanted to exercise in the first place. Although it appears that we have not directly answered this question before, we agree with the case law developed in other circuits that holds that an employee who fails to request post-termination process cannot later sue for having been deprived of it.

*Winskowski*, 442 F.3d at 1111.

Here, Plaintiff does not dispute that she did not request a name-clearing hearing. Nevertheless she was afforded an opportunity to clear her name at the post-termination arbitration hearing provided in the Employment Agreement, but elected not to do so, electing instead to stipulate to postpone the hearing while she pursued her §1983 action in federal court. Under these circumstances Plaintiff has not been deprived of a liberty interest by any conduct of the City **denying** Plaintiff a name-clearing hearing. Therefore her claim must fail.

/ / /

/ / /

/ / /

/ / /

/ / /

15

1          **4)      Plaintiff's Contention That *Paul  v. Davis* Has No Application to this
2                   Case Is Mind Boggling.**

3          Plaintiff's criticism of Defendants' citation to *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155,

4   47 L.Ed.2d 405 (1976) is without any merit whatsoever.  *Paul* was properly cited.  Due process is

5   not invoked by mere damage to reputation.  If counsel for Plaintiff would have bothered to read *Paul*,

6   he would have learned that *Paul* was defining what the court meant in *Constantineau*, a case quoted

7   by Plaintiff in her response, at page 13 of Plaintiff's brief.  In fact, the very language quoted in

8   Plaintiff's brief was the focus of *Paul*.  *Paul* determined that the appellate court had interpreted

9   *Constantineau* too broadly, like Plaintiff has in this case.  There must be more than stigma  to the

10  reputation to be actionable under the Due Process Clause.  There must be stigma **plus** an alteration

11  of legal status under state law.

12         As the *Paul* court said:

13                 We think that the italicized language in the last sentence quoted,
                   "because of what the government is doing to him," referred to the fact
14                 that the governmental action taken in that case deprived the
                   individual of a right previously held under state law -- the right to
15                 purchase or obtain liquor in common with the rest of the citizenry.
                   "Posting," therefore, significantly altered her status as a matter of
16                 state law, and it was that alteration of legal status which, combined
                   with the injury resulting from the defamation, justified the invocation
17                 of procedural safeguards.   The "stigma" resulting from the
                   defamatory character of the posting was doubtless an important factor
18                 in evaluating the extent of harm worked by that act, but we do not
                   think that such defamation, standing alone, deprived Constantineau
19                 of any "liberty" protected by the procedural guarantees of the
                   Fourteenth Amendment.

20

21  *Paul*, 424 U.S. at 708.

22         The failure of Plaintiff's counsel to recognize the significance of the holding in *Paul*, in light

23  of his reliance on the questionable language in *Constantineau*, and particularly since Plaintiff is

24  advancing a "stigmatized reputation claim in this §1983 action, is astounding and raises serious

25  credibility issues as to Plaintiff's oft-repeated "inapposite" accusations.

26  / / /

27  / / /

28  / / /

16

## V.    PLAINTIFF'S SECOND CLAIM FOR RELIEF FAILS TO STATE A CLAIM FOR CONSPIRACY.

In Plaintiff's **three sentence response** to Defendants' motion to dismiss Plaintiff's conspiracy claim, Plaintiff contends that because her Second Claim for Relief incorporates by reference the prior allegations in the First Amended Complaint, this alone somehow validates the legal sufficiency of her conspiracy claim.  Nothing could be further from the truth.

Even if the Second Claim for Relief incorporates the prior allegations in the First Amended Complaint, Plaintiff has still failed to state a claim for conspiracy.  This is so because there is no allegation in the First Amended Complaint that the purpose of the conspiracy was to deprive Plaintiff **of her constitutional rights protected by §1983**.  The purpose of the conspiracy as alleged in the complaint was merely to "remove Plaintiff from her position as COH City Manager".  See, Paragraph 18 of the First Amended Complaint.  This is not an unlawful objective.  The City Council had the right under the Employment Agreement to terminate Plaintiff's employment with or without cause, or to not renew the Employment Agreement.  Since the objective of the conspiracy is not to violate Plaintiff's constitutional rights, the Second Claim for Relief pleads only a state law civil conspiracy tort.  An actionable conspiracy under Nevada law must intend to accomplish an unlawful act for the purpose of harming another.  *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989).

Since the purpose of the conspiracy as alleged in Plaintiff's Second Claim for Relief is merely "to remove Plaintiff from her position as COH City Manager", an act that is not unlawful under the Employment Agreement, Plaintiff has failed to state a viable civil conspiracy under Nevada law.  Construing Plaintiff's Second Claim for Relief to be a state conspiracy claim, Defendants are immune from liability based upon discretionary immunity provided by NRS 41.032, and the statements they are alleged to have made in Paragraph 12 of the First Amended Complaint are absolutely privileged and cannot be used to impose liability under NRS 241.0353.

To prove a conspiracy under §1983, an agreement or meeting of the minds to violate the plaintiff's constitutional rights must be shown.  However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially plead.  Vague and

17

conclusory allegations of participation in civil rights violations are insufficient to withstand a motion to dismiss. *Durham v. Babcock*, 1991 U.S.App.Lexis 13995 *4 (9th Cir. Jun. 21, 1991); *Secress v. Ullman*, 2005 U.S.App.Lexis 16490 (9th Cir. Aug. 5, 2005).

Here, Plaintiff has failed to allege that the purpose of Defendants' purported conspiracy was to violate Plaintiff's federal constitutional rights. Although it is true that court's should not impose a heightened pleading standard on plaintiff's §1983 claims, this does not mean as Plaintiff suggests that Plaintiff "need only satisfy the simple requirement of Rule 8(a)". Plaintiff's Response Brief, pg. 3, fn. 1. In addition to providing "fair notice" of the claim, the complaint's factual allegations must show the pleader is "entitled to relief". Fed.R.Civ.P. 8(a)(2). This means the complaint must allege "enough facts to state a claim to relief that is 'plausible on its face'". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Moss v. U.S. Secret Service*, 2009 U.S.App.Lexis 15694 (9th Cir. Jul. 16, 2009).

In Paragraph 18 of Plaintiff's Second Claim for Relief, it is alleged that "the individual Defendants conspired to remove Plaintiff from her position as COH manager". This allegation is merely a conclusion. More importantly it does not say that the purpose of the conspiracy was to violate Plaintiff's federal constitutional rights. To determine whether a claim for relief is plausible, bare allegations amounting to nothing more than a formal recitation of the elements of a constitutional claim, for purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth. Such allegations are to be discounted because they do nothing more than state a legal conclusion, even if that conclusion is cast in the form of a factual allegation. Thus, in determining whether a claim is plausible, the court must assign no weight to conclusory allegations. Moss, at *14-15. For a complaint to survive a motion to dismiss, the non-conclusory "factual content", and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Id., at *16.

Thus, to prevail on her conspiracy claim Plaintiff must prove that the individual Defendants conspired to violate Plaintiff's constitutional rights. Although Plaintiff's Second Claim for Relief incorporates the prior allegations in the First Amended Complaint, none of those allegations contain factual allegations from which the court can reasonably infer that the individual Defendants

conspired with one another and agreed to engage in conduct for the purpose of violating Plaintiff's constitutional rights. Plaintiff's conspiracy claim, without any factual content to bolster it, is just the sort of conclusory allegation that is inadequate to enhance the plausibility of Plaintiff's conspiracy claim. Since there are no factual allegations in Plaintiff's First Amended Complaint to support Plaintiff's conspiracy claim, the claim is not plausible and must be dismissed for that reason alone.

## VI. PLAINTIFF'S FIRST CLAIM FOR RELIEF FAILS TO STATE A §1983 CLAIM.

Plaintiff fails to allege in her First Claim for Relief that official policy was responsible for a deprivation of her constitutional rights. *Monell, et al. v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff attempts to excuse the failure to plead "official policy" by contending that it is not necessary to do so because the "statements and votes of the Councilmembers. . .may fairly be said to represent. . . COH 'official policy'". That may or may not be true. However, it does not excuse Plaintiff from pleading the elements of her claim. Plaintiff relies on *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) for the proposition that there is no heightened pleading requirements in §1983. This is true, however, being required to plead the element of "official policy" is not a heightened pleading. This is so, because it is necessary to state a plausible claim. Even *Galbraith* recognized that a plaintiff must allege at least a bare allegation that plaintiff's injury was caused by an "official policy, custom or practice". *Id.*, at 1127.

In addition to Plaintiff's failure to allege an injury caused by enforcement of official policy, Plaintiff's First Claim is not plausible in light of the fact that the pleadings show Plaintiff had no property interest in continued employment, the terms of her employment were governed by her Employment Agreement, Plaintiff waived her right to a pre-termination hearing, notice and an opportunity to respond, the statements by the Council members did not rise to the accusations of "moral turpitude" and Plaintiff waived her right to a name-clearing hearing.

/ / /

/ / /

/ / /

**VII.    CONCLUSION.**

Based on the foregoing, Defendants' Fed.R.Civ.P. 12(c) Motion for Judgment on the Pleadings should be granted and the First and Second Claims for Relief in First Amended Complaint be dismissed.

Dated this 13th day of August, 2009.

WILLIAM E. COOPER LAW OFFICES


By _____/s/_____
          William E. Cooper, Esq.
          601 E. Bridger Avenue
          Las Vegas, Nevada 89101
          Attorney for Defendants

1

**<u>CERTIFICATE OF SERVICE</u>**

2   I hereby certify that a true and correct copy of the **DEFENDANTS' REPLY BRIEF IN**

3   **SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**, has been forwarded to the

4   following parties on this 13th day of August, 2009.

5   ***Via Electronic Court Mail Delivery System***
    Norman H. Kirshman
6   Law Offices of Norman Kirshman
    3800 Howard Hughes Parkway, Suite 500
7   Las Vegas, Nevada 89169

8

9   By: _____/s/_____
        Diedre N. Hoffman, an employee
10      of William E. Cooper Law Offices

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**I.  THE FOLLOWING ITEMS INCLUDED IN PLAINTIFF'S RESPONSE BRIEF CONSTITUTE OUTSIDE EVIDENCE AND SHOULD BE EXCLUDED FROM CONSIDERATION ON DEFENDANTS' RULE 12(c) MOTION.**

    **A.  Documentary Exhibits.**

        1)    Exhibit A    City of Henderson Ordinance No. 2807;

        2)    Exhibit C    City of Henderson Resolution No. 3863;

        3)    Exhibit D    Las Vegas Review Journal Newspaper Articled dated March 28, 2009;

        4)    Exhibit E    Nevada Secretary of State Corporate Information for the Henderson Space and Science Center;

        5)    Exhibit F    Letter dated April 22, 2009 from Kirshman to Hughes;

        6)    Exhibit G    Letter dated April 30, 2009 from Cooper to Kirshman; and

        7)    Exhibit H    Email/Letter dated May 7, 2009 from Cooper to Zarate.

    **B.  Declarations.**

        1)    Peck Declaration;

        2)    Kirshman Declaration; and

        3)    Vlahos Declaration.

    **C.  Pages from Plaintiff's Response Brief.**

        1)    Pgs. 2-3, lines 28-4;

        2)    Pg. 4, lines 2-13;

        3)    Pg. 4, line 28;

        4)    Pg. 5, lines 5-8;

        5)    Pg. 6, lines 7-18;

        6)    Pg. 7, lines 23-25;

        7)    Pg. 11, line 10;

        8)    Pgs. 11-12, lines 14-2;

        9)    Pg. 12, lines 26-28;

| | | |
|---|---|---|
| 10) | Pg. 13, line 22; |
| 11) | Pg. 14, line 2; |
| 12) | Pgs. 15-16, lines 28-20; and |
| 13) | Pg. 17, lines 7-10. |